**Gerald and Judy BECKER, Appellees,**

v.

**IOWA DEPARTMENT OF HUMAN SERVICES, Appellant.**

No. 02–0416.

Supreme Court of Iowa.

May 7, 2003.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellant.

Elizabeth A. Rosenbaum, Sioux City, for appellees.

LARSON, Justice.

The Iowa Department of Human Services (DHS) appeals from a district court ruling that grandparents are entitled to an adoption subsidy under Iowa Code section 600.20 (2001). Because we disagree with the district court's interpretation of the statute, we reverse and remand.

## I. *Issues and Prior Proceedings.*

Samantha and Nicole are twin girls born December 4, 1990. The parental rights of their parents were terminated on February 1, 2000, and guardianship and custody of the girls were placed with their paternal grandparents, Gerald and Judy Becker. In the court's termination ruling, it noted that the Beckers had taken adoption classes, had educated themselves on addictions (from which the children's parents suffered), and had received a positive home study. The court urged that the Beckers protect the girls from their parents' harmful influence and put the needs of the twins above those of their parents. Although the agency disagreed with the grandparent placement, it did not appeal the decision to place the children with them. The court stated it would retain jurisdiction over the children until an adoption or guardianship was completed.

On September 27, 2000, the Beckers' attorney wrote to DHS requesting an adoption subsidy pursuant to Iowa Code section 600.20 (1999),[1] claiming the Beckers would be financially unable to adopt the girls without the subsidy. The DHS informally responded that Iowa Code section 600.20 provided an adoption subsidy only if the children were in the guardianship of the State immediately prior to the adoption. Because the Beckers, not the State, had custody and guardianship of the children, the Beckers did not meet the requirements of the statute, according to the DHS. Although the DHS's opinion was that the Beckers could not qualify, it sent an application for the subsidy to be completed by the Beckers. The application was completed, but the DHS rejected it. An administrative law judge affirmed the denial of the subsidy, based on Iowa Code

---

1. The language of the 1999 version of the statutes and the 2001 version used by the district court are identical. For convenience, all references to the Code will be to the 2001 edition.

section 600.20 and its requirement that custody of the children be with the state immediately prior to adoption. This decision was adopted as the final decision of the agency, and the Beckers sought judicial review. The Woodbury County District Court reversed the agency ruling and held that section 600.20 did not bar the granting of the subsidy.

The DHS appealed, arguing that the statute specifies that the children must be adopted from state custody and that the statute does not violate the Federal Adoption Assistance and Child Welfare Act, as alleged by the plaintiffs. The DHS argues that the intent of the federal law was to move hard-to-place children out of the state system, and children who are already outside the system do not qualify. The Iowa statute therefore follows the principles of the federal law and is not preempted by it.

## II. *The Statutes and Administrative Code Rules.*

This case turns on our interpretation of Iowa Code sections 600.17 and 600.20 and the Administrative Code provisions implementing them. Iowa Code section 600.17 provides:

Financial assistance.

The department of human services shall, within the limits of funds appropriated to the department of human services and any gifts or grants received by the department for this purpose, provide financial assistance to any person who adopts a child with physical or mental disabilities or an older or otherwise hard-to-place child, if the adoptive parent has the capability of providing a suitable home for the child but the need for special services or the costs of maintenance are beyond the economic resources of the adoptive parent. . . .

Iowa Code § 600.17 (2001). This statute, however, is limited by section 600.20:

Availability of assistance.

Financial assistance shall be available only if the child to be adopted was under the guardianship of the state, county, or a licensed child-placing agency *immediately prior* to adoption. . . .

Iowa Code § 600.20 (emphasis added). The State, like the ALJ, focused on the language "immediately prior" to deny the subsidy.

The Iowa Administrative Code established guidelines for the subsidies. Rule 441–201.3 defines the conditions of eligibility.

The child is eligible for subsidy when the department or a private agency has documented that it has been unable to place the child in an appropriate adoptive home without a subsidy and the child is determined to be a child with "special needs" based on one or more of the following reasons: . . . .

*f.* The child is aged eight or over and Caucasian. . . .

*h.* The child is a member of a sibling group of three or more who are placed in the same adoptive home, or a sibling group of two if one of the children has special needs because of one of the above reasons.

Iowa Admin. Code r. 441–201.3 (2001). These children clearly fit these guidelines. They are Caucasian, a sibling group of two, and they are over the age of eight. *See* Iowa Admin. Code r. 441–201.3(1)(*f*), (*h*).

The Beckers contend that section 600.20 conflicts with federal law, specifically, "The Adoption Assistance and Child Welfare Act of 1980," P.L. 96–272, passed by Congress in an effort to provide, with states, federal financial assistance to aid in the adoption of children. The Children's Bu-

reau of the Department of Health and Human Services, which coordinates the federal portion of the program, explains the purpose of the act:

This landmark legislation was intended to provide, for the first time, Federal financial participation with States in a program of incentives and supports to families adopting certain children who, because of a variety of specific factors or conditions [later defined as including age, ethnic background, emotional, physical or mental handicap, or membership in a minority or sibling group], could not be adopted without assistance.

U.S. Dep't. of Health & Human Servs. Federal Policy Statement, ACYF–PIQ–90–02 (October 2, 1990).

### III. *Application of the Statute and Rules.*

The Beckers rely on this conclusion in the district court's ruling:

In this instance, it is clear that the legislature's intention was to have the Iowa Department of Human Services do whatever is in the best interest of the children. Specifically, [Iowa Code section] 600.20 is intended to provide adoption assistance for children with special needs.

We agree with the district court and the Beckers that these children fit the profile of special-needs children. In fact, the DHS does not challenge that. The problem is not with the children, but with the circumstances under which their custody arrangements have been made. They are not presently in state custody, so they cannot qualify for the subsidy because of the requirement of section 600.20 that they be "under the guardianship of the state, county, or a licensed child-placing agency immediately prior to adoption."

A dictionary defines "immediate" as

acting or being without the intervention of another object, cause, or agency: DIRECT, PROXIMATE ... being or occurring without reference to other states or factors: ... having no individual intervening: being next in line or relation: not secondary or remote ... characterized by contiguity: existing without intervening space or substance....

Webster's Third New International Dictionary 1129 (unabr. ed.1986).

■■■ We believe the word "immediately," as used in section 600.20, connotes a temporal feature, as to which some argument might be made if the adoption is "soon," or "close in time," to the state's guardianship. We believe, however, it also suggests a functional immediacy, "acting or being without the intervention of another object, course, or agency; DIRECT, PROXIMATE ... characterized by contiguity." As to this latter definition of immediate, there can be no argument in this case. To qualify for the subsidy, we believe, the adoption must be contiguous in function, i.e., without any intervening agency or individual, in order to qualify. This lends certainty to the application of section 600.20 because, in every case, there clearly is or is not an intervening agency or person. It also furthers the goal of the adoption subsidy program, which is to move children out of public or private agencies by encouraging private involvement through financial incentives. The DHS argues that this is the interpretation to be given section 600.20 because the funds available for this purpose are limited, and they must be applied for the purpose of moving children out of limbo, not to finance adoptive parents for children who are already out of the state system. We give weight to administrative interpretations of statutes that agencies administer. *See* Iowa Code § 4.6(6); *City of Waterloo v. Black Hawk Mut. Ins. Ass'n,* 608

N.W.2d 442, 445 (Iowa 2000); *In re G.J.A.,* 547 N.W.2d 3, 6 (Iowa 1996).

This interpretation is also consistent with federal regulations, which suggest the adoption subsidy is to be used as an incentive to place children with "appropriate parents" and should be used only if other efforts to that end are unsuccessful. For example, under the regulations,

> the State must determine that there exists a specific factor or condition because of which it is reasonable to conclude that the child cannot be placed with adoptive parents without providing title IV–E adoption assistance....
>
> The State must determine that in each case a reasonable, but unsuccessful, effort to place the child with appropriate parents without providing adoption assistance has been made.

U.S. Dep't of Health & Human Servs., Policy Announcement, ACYF–CB–PA–01–01, at 2 (January 23, 2001).

## IV. *The Federal Preemption Argument.*

■ Beckers dispute that federal regulations such as these suggest that adoption subsidies should be used solely to encourage otherwise unlikely cases of adoption to go forward rather than as an aid to all children who qualify. In fact, Beckers argue that imposition of this "immediate" custody requirement is contrary to, and thus preempted by, federal statutes, which are not so limited. This argument was presented to, but rejected by, the Pennsylvania Supreme Court, which said:

> "Although, unlike Pennsylvania law the [federal] Child Welfare Act does not specify that a child be in agency custody in order to be eligible for adoption assistance, both [the federal] statute by its terms, and its history contemplate providing assistance only to children in state custody. The federal law refers to a state's "placement" of a "foster child" for adoption and requires that the state agency determine that the child cannot be placed for adoption because of specified factors and/or conditions, after the agency has made an unsuccessful effort to place the child with adoptive parents."

*C.B. & J.B. v. Commonwealth,* 567 Pa. 141, 786 A.2d 176, 182 (2001) (quoting dissent in lower court in same case, *Barczynski v. Dep't of Pub. Welfare,* 727 A.2d 1222, 1226 (Pa.Cmmw.Ct.1999) (Colins, J., dissenting)). After discussing the history of the Pennsylvania and federal acts, the Pennsylvania Supreme Court stated,

> for all of these reasons, we hold that the Pennsylvania Act's requirement of agency custody does not conflict with the federal Act and, therefore, the requirement [of state custody] is not preempted.

*Id.* at 183. (The Pennsylvania Supreme Court ruled that the subsidy could be paid in that case—not because the state custody requirement was invalid but because, the court concluded, the children were actually in state custody. *Id.* at 185–86.).

## V. *Conclusion.*

Based on the DHS's interpretation of the statute, the federal regulations quoted above, and our own analysis, we conclude the plaintiffs are not entitled to receive the adoption subsidy under Iowa Code section 600.20. We reverse and remand for an order dismissing the petition.

**REVERSED AND REMANDED.**