# IN THE SUPREME COURT OF IOWA

No. 58 / 04-1730

Filed June 2, 2006

**ALLAN T. THOMS**,

    Appellant,

vs.

**IOWA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM and
EMPLOYMENT APPEAL BOARD**,

    Appellees.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Appeal from district court judgment affirming administrative agency's determination of retiree's pension benefits. **AFFIRMED.**

Alice E. Helle and Douglas E. Gross of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellant.

Gregg A. Schochenmaier, Des Moines, for appellees.

**CADY, Justice.**

In this judicial review proceeding, an Iowa Public Employees' Retirement System (IPERS) pensioner who retired, returned to work, and retired again claims he was entitled to have his retirement benefits calculated by adding the years of his original employment to the years of his reemployment. Instead, IPERS calculated the amount of his benefits by separately determining his benefits based upon his original employment and adding them to the benefits calculated from the period of his reemployment. The district court affirmed the Employment Appeal Board decision that affirmed a decision by an administrative law judge (ALJ) that found IPERS properly determined the benefits. On our review, we affirm the district court.

## I.    Background Facts and Proceedings

Allan Thoms was a State employee covered by IPERS. In 1994, at age fifty-six, he retired from his State employment after 14.75 years of service. He began receiving monthly IPERS benefits of $570.78 in July 1994. In April 1995, he returned to IPERS-covered employment. His retirement benefits were suspended after his earnings exceeded the limitation in Iowa Code section 97B.48A (1995).[1] Thoms worked for the

---

[1]That section provided:

> If, after the first day of the month in which the member attains the age of fifty-five years and until the member's sixty-fifth birthday, a member who has a bona fide retirement under this chapter is in regular full-time employment during a calendar year, the member's retirement allowance shall be suspended for as long as the member remains in employment for the remainder of that calendar year. However, effective January 1, 1992, employment is not full-time employment until the member receives remuneration in an amount in excess of seven thousand four hundred forty dollars for a calendar year. Effective the first of the month in which a member attains the age of sixty-five years, a retired member may receive a retirement allowance after return to covered employment regardless of the amount of remuneration received.

State for an additional 6.5 years, and retired again on October 26, 2001. He then applied for retirement benefits.

On January 30, 2002, IPERS notified Thoms by letter that his final wages had been credited to his account, and his reemployment termination notice had been processed. IPERS gave Thoms the choice of a lump-sum refund or monthly benefits for the remainder of his life. Thoms requested monthly benefits, which were subsequently recalculated to be $1441.83. This amount was based upon his original monthly benefit of $570.78, added to the monthly benefit of $871.05 derived from his period of reemployment.

Thoms appealed the recalculation of benefits, asserting his "benefit should be recalculated to take into account his additional years of service, additional earnings and increased age at the time of his 're-retirement,' with a single recalculated retirement allowance being paid." *See* Iowa Code § 97B.20A (2001) ("If the party appeals the decision of the department, the department shall conduct an internal review of the decision and the chief benefits officer shall notify the individual who has filed the appeal in writing of the department's decision."). In other words, Thoms wanted his retirement benefits recalculated based on the total years of service from his two periods of employment and the circumstances existing at the time of his second retirement. The two different methods of calculations resulted in a significant difference in the amount of benefits.[2] IPERS conducted an internal review and issued

---

Iowa Code § 97B.48A(1) (1995).

[2]Thoms wanted IPERS to add his first period of employment, 14.75 years, to his second period of employment, 6.75 years, for a total of 21.5 years. This increases his total benefit more than just adding the two calculated benefits together because IPERS benefits are calculated using a "fraction of years of service," in which the numerator is the years of service, and the denominator is 30. The formula for calculating monthly IPERS benefits is:

a final agency determination affirming its recalculation of Thoms's benefits. *See id.*

Thoms appealed IPERS's determination to the Department of Inspections and Appeals (DIA). *See id.* ("The individual who has filed the appeal may file an appeal of the department's final decision with the department under chapter 17A by notifying the department of the appeal in writing within thirty days after the notification of its final decision was mailed to the party's last known mailing address. Once notified, the department shall forward the appeal to the department of inspections and appeals."). An administrative law judge (ALJ) with the DIA held a hearing. Thoms and IPERS entered into a stipulation of facts (agreeing to the facts set forth above) and submitted it to the ALJ. The ALJ issued its decision on January 20, 2004. The ALJ found IPERS was correct in calculating separate benefits based on the separate employment periods

---

$$1/12 \times (.60 \times \text{three-year average covered wage}) \times \frac{\text{Years of service}}{30}$$

Iowa Code § 97B.49A(3) (2001); Iowa Code § 97B.49(5)(*b*) (1995).

Thoms also wanted to use a figure of approximately $100,000 for his three-year average covered wage, not the $35,666 average wage used by IPERS. The $35,666 figure is the average of Thoms's wages in 1992, 1993, and 1994—the three years before his initial retirement. Before Thoms retired the second time, his salary was approximately $100,000.

Finally, Thoms wanted to calculate his benefits based on his age at the time of the second retirement, 64. When he retired the first time, he was 56, so IPERS applied an early-retirement penalty. *See* Iowa Code § 97B.50(1)(*a*) (1995) ("[A] vested member, upon retirement prior to the normal retirement date . . . is entitled to receive a monthly retirement allowance . . . reduced as follows: . . . For a member who is less than sixty-two years of age, by twenty-five hundredths of one percent per month for each month that the early retirement date precedes the normal retirement date."). He wanted IPERS to do a new calculation of his benefits as of 2001, when he was 64, so no early-retirement penalty would apply. *See* Iowa Code § 97B.50(3) (2001) ("A member who is at least sixty-two years of age and less than sixty-five years of age, and who has completed twenty or more years of membership service and prior service, shall receive benefits under 97B.49A through 97B.49G, as applicable, determined as if the member had attained sixty-five years of age.").

and adding them together to send a single check. Thoms petitioned for review by the Employment Appeal Board. *See id.* § 97B.27. The Board affirmed and adopted the ALJ's decision.

Thoms filed a petition for judicial review in district court. *See id.* § 97B.29 ("Judicial review of action of the system may be sought in accordance with the terms of the Iowa administrative procedure act."). Thoms claimed the agency decision was subject to reversal under each of the fourteen grounds for reversal in the administrative procedure act. *See id.* § 17A.19(10)(*a*)-(*n*). The district court affirmed the agency's decision. Thoms appeals.

## II.    Standard of Review

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs the scope of our review in this case. Iowa Code § 97B.29. Under the Act, we may only interfere with the agency decision if it is erroneous under a ground enumerated in the statute, and a party's substantial rights have been prejudiced. *Id.* § 17A.19(10). Thoms did not specify which of the grounds in the statute supports reversal of the agency's decision. However, Thoms is challenging the agency's interpretation of Iowa Code section 97B.48A, the statute governing benefits upon retirement after employment. Section 17A.19(10)(*c*) provides that an agency's action is subject to reversal if it is "[b]ased upon on erroneous interpretation of a provision of law whose interpretation has not clearly been vested in the discretion of the agency." *Id.* § 17A.19(10)(*c*); *see also* Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act (1998) Chapter 17A, Code of Iowa (House File 667 As Adopted)* 62 (1998) [hereinafter Bonfield] ("Normally, the interpretation of a statute is a pure question of law over which agencies are not delegated any special powers

by the General Assembly so, a court is free to, and usually does, substitute its judgment *de novo*[3] for that of the agency and determine if the agency interpretation of the statute is correct. That is what the first ten words of paragraph (c) say."). This section utilizes the familiar correction-of-errors-at-law standard of review. Section 17A.19(10)(*l*) provides that an agency's action is subject to reversal if it is "[b]ased upon an irrational, illogical, or wholly unjustifiable interpretation of a provision of law whose interpretation has clearly been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.19(10)(*l*); *see also* Bonfield at 62 ("[W]here the General Assembly clearly delegates *discretionary* authority to an agency to interpret or elaborate a statutory term based on the agency's own special expertness, the court may not simply substitute its view as to the meaning or elaboration of the term for that of the agency but, instead, may reverse the agency interpretation or elaboration only of it is arbitrary, capricious, unreasonable, or an abuse of discretion."). This section utilizes a deferential abuse-of-discretion standard of review. Bonfield at 62. To determine which section governs our review—and, consequently, how much deference we give to the agency's interpretation—we must determine whether the interpretation of section 97B.48A has "clearly been vested in the discretion of" IPERS.

---

[3]*De novo*, of course, means "anew." *Black's Law Dictionary* 447 (7th ed. 1999). When we interpret a statute "de novo," what we are doing is employing our familiar correction-of-errors-at-law standard of review. *See, e.g.*, *Norwest Credit, Inc. v. City of Davenport*, 626 N.W.2d 153, 155 (Iowa 2001) (stating that under correction-of-errors-of-law standard, we are not bound by lower tribunals' determinations of law but instead interpret the law on our own and determine whether our conclusion mirrors that already made); *see also* Bonfield at 62 ("[M]ost Iowa cases treat agency interpretation of the meaning of a statute as a pure question of law over which they have *de novo* review, allowing the court simply to substitute its opinion of the meaning of the statute for that of the agency . . . .").

Chapter 97B makes IPERS the administrator of the retirement system established under Iowa Code chapter 97B. *See id.* § 97B.4(2) (setting forth IPERS's powers and duties); *see also id.* § 97B.1(1) ("The Iowa public employees' retirement system shall administer the system established under this chapter."). Section 97B.4 provides IPERS with rulemaking authority:

> The system may adopt . . . rules . . . and take other action it deems necessary for the administration of the retirement system in conformity with the requirements of this chapter, the applicable provisions of the Internal Revenue Code, and all other applicable federal and state laws. The rules shall be effective upon compliance with chapter 17A.

*Id.* § 97B.4(2)(*a*). We have held that similar language vested the interpretation of a statute in the relevant agency's discretion. In *City of Marion v. Iowa Dep't of Revenue & Finance*, we concluded that Iowa Code section 422.68(1), which provides, "The director shall have the power and authority to prescribe all rules not inconsistent with the provisions of this chapter, necessary and advisable for its detailed administration and to effectuate its purposes," vested the interpretation of section 422.45(20) with the department of revenue and finance. *City of Marion*, 643 N.W.2d 205, 207 (Iowa 2002); *accord Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (concluding section 123.21, granting the agency authority to adopt rules "necessary to carry out this chapter" "clearly vested the interpretation of section 123.45 with the agency"); *Becker v. Iowa Dep't of Human Servs.*, 661 N.W.2d 125, 128-29 (Iowa 2003) ("We give weight to administrative interpretations of statutes that agencies administer." (citing Iowa Code § 4.6(6); *City of Waterloo v. Black Hawk Mut. Ins. Ass'n*, 608 N.W.2d 442, 445 (Iowa 2000); *In re G.J.A.*, 547 N.W.2d 3, 6 (Iowa 1996))). Thus, we utilize a deferential standard of

review in this case. This does not mean the agency's interpretation is conclusive, but we give it "appropriate deference." *See* Iowa Code § 17A.19(11)(*c*) (stating that with respect to matters vested by law in an agency, we "[s]hall give appropriate deference" to the agency's interpretation); *see also* Bonfield at 72 (defining "appropriate deference" to mean "the agency action is subject to review by the unreasonable, arbitrary, capricious, or abuse of discretion standard"). We will not reverse an agency action based on an interpretation of law whose interpretation has been clearly vested by a provision of law in the agency's discretion, unless the agency's interpretation is "irrational, illogical, or wholly unjustified." Iowa Code § 17A.19(10)(*l*); *see also Niles v. Iowa Dist. Court*, 683 N.W.2d 539, 541 (Iowa 2004) (explaining that in interpreting statutes, specific terms (such as "irrational, illogical, or wholly unjustified") control general terms (such as "appropriate deference" (citing *Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 189 (Iowa 1997); *Christenson v. Iowa Dist. Ct.*, 557 N.W.2d 259, 262-63 (Iowa 1996))).

## III.  Discussion

Section 97B.48A(3) determines how benefits are to be calculated when an IPERS member retires from covered employment, then resumes covered employment, and retires again. Both parties agreed the resolution of the correct computation of benefits rests with this statute. It provides:

> Upon a retirement after reemployment, a retired member may have the retired member's retirement allowance redetermined under this section or section 97B.48, section 97B.50, or section 97B.51, whichever is applicable, based upon the addition of credit for the years of membership service of the employee after reemployment, the covered wage during reemployment, and the age of the employee after reemployment. The member shall receive a single

retirement allowance calculated from both periods of membership service, one based on the initial retirement and one based on the second retirement following reemployment. If the total years of membership service and prior service of a member who has been reemployed equals or exceeds thirty, the years of membership service on which the original retirement allowance was based may be reduced by a fraction of the years of service equal to the number of years by which the total years of membership service and prior service exceeds thirty divided by thirty, if this reduction in years of service will increase the total retirement allowance of the member. The additional retirement allowance calculated for the period of reemployment shall be added to the retirement allowance calculated for the initial period of membership service and prior service, adjusted as provided in this subsection. The retirement allowance calculated for the initial period of membership service and prior service shall not be adjusted for any other factor than years of service. The retired member shall not receive a retirement allowance based upon more than a total of thirty years of service. Effective July 1, 1998, a redetermination of a retirement allowance as authorized by this subsection for a retired member whose combined service exceeds the applicable years of service for that member as provided in sections 97B.49A through 97B.49G shall have the determination of the member's reemployment benefit based upon the percentage multiplier as determined for that member as provided in sections 97B.49A through 97B.49G.

Iowa Code § 97B.48A(3).

Based on this statute, IPERS calculates retirement benefits for members who retire after reemployment by taking the sum of the benefits calculated from the initial period of employment and the benefits calculated from the period of reemployment. These two separate calculations are then added together into a single retirement allowance. One administrative rule promulgated by IPERS similarly explains the recomputation of benefits by a member who is reemployed in covered employment after retirement and retires again. It provides:

A member who is reemployed in covered employment after retirement may, after again retiring from employment, request a recomputation of benefits. The member's retirement benefit shall be increased if possible by the addition of a *second annuity,* which is based on years of

reemployment service, reemployment covered wages and the benefit formula in place at the time of the recomputation. A maximum of 30 years of service is creditable to an individual retired member. If a member's combined years of service exceed 30, a member's initial annuity may be reduced by a fraction of the years in excess of 30 divided by 30. *The second retirement benefit will be treated as a separate annuity by IPERS.* Any contributions that cannot be used in the recomputation of benefits shall be refunded to the employee and the employer.

Iowa Admin. Code r. 495—12.8(3) (2004) (emphasis added).

Thoms primarily challenges the method of calculation by IPERS by isolating the second sentence in the relevant statute, "The member shall receive a single retirement allowance calculated from both periods of membership, one based on the initial retirement and one based on the second retirement following reemployment." Iowa Code § 97B.48(3). He claims this sentence expresses the legislative intent for retired members to receive "a single retirement allowance," not two allowances added together, calculated from both periods of membership service, meaning the total years of service. In other words, Thoms claims this sentence means benefits following retirement after reemployment are determined by adding the two periods of employment together and computing benefits based on a single uninterrupted period of employment. IPERS, on the other hand, asserts this sentence merely means that the member should only receive one monthly allowance in the form of a single check for the total of the two benefits added together.

We interpret statutes by considering them as a whole, not by looking at isolated parts of the statute. *State v. Young*, 686 N.W.2d 182, 184-85 (Iowa 2004). Thus, we begin our analysis with the entire statute in mind.

A member who retires after reemployment already has an existing retirement allowance in place. The benefits are merely suspended or

otherwise limited during the period of reemployment. Thus, retirement after a period of reemployment means the existing retirement allowance may need to be redetermined based upon the period of reemployment. Section 97B.48A(3), the statute at the center of this controversy, addresses how the allowance is redetermined.

We acknowledge the section is not crystal clear, especially considering only the first two sentences of the statute. The statute addresses a complicated subject matter that involves a very detailed and intricate process. It is not always easy to express mathematical formulas in words, and it is understandable how different interpretations can result from statutes describing the rather enigmatic subject of retirement and pension plans. We have recognized the ease with which different interpretations can result from almost all statutes, and this is even more so with pension statutes. *See Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 713 (Iowa 2005) ("Disputes over the interpretation of a statute can arise even with the most carefully drafted laws. Disputes arise because it is nearly impossible, even for the most thoughtful lawmakers, to anticipate all future circumstances and neatly corral them into communicative words." (citing 2A Norman J. Singer, *Statutes and Statutory Construction* § 45:02, at 15 (6th ed. 2000))). However, when section 97B.48A(3) is considered in its entirety, it becomes clear that the redetermination is based upon the sum of the two separate benefit amounts computed for each period of employment. Thus, we find it largely unnecessary to lock horns over particular words and phrases within each sentence of the statute in this case because the entirety of the statute clearly resolves the dispute.

After the statute describes in the first sentence the three factors upon which a redetermination is made ("the years of membership after reemployment, the covered wage during reemployment, and the age of the employee after reemployment"), and explains in the second sentence that the member receives a single retirement allowance based on the redetermination calculated from both periods of service ("The member shall receive a single retirement allowance calculated from both periods of membership service, one based on the initial retirement and one based on the second retirement following reemployment."), the third sentence describes the calculation method when the total years of service exceeds thirty years. While the third sentence is not factually applicable to this case, it unmistakably clarifies the intended calculation scheme under the statute for retirement after reemployment.

It was necessary for the legislature to articulate a specific provision describing how a retirement allowance would be calculated for retirement after reemployment in the event the total years of membership service exceeded thirty years because monthly IPERS benefits equal one-twelfth of the applicable percentage of the three-year average covered wage multiplied by the fraction of years of service, which is the years of service divided by thirty years. Iowa Code § 97B.49A(3). However, this fraction of years of service, used as the multiplier, can never exceed one. *Id.* § 97B.49A(1)(*b*). Thus, years of service by a state employee in excess of thirty years do not benefit a member in the calculation process by increasing the fraction of years of service to a number greater than one.[4]

---

[4]Years of service by a state employee over thirty years do add to the applicable percentage of the applicable wage component in the formula by increasing it up to a maximum of sixty-five percent. *Id.* § 97B.49A(1)(*a*). That is, IPERS benefits are calculated in part based on sixty percent of the three-year average covered wages. *Id.* § 97B.49A(3). Years of service in excess of thirty can increase this percentage up to sixty-five percent. *Id.* § 97B.49A(1)(*a*).

Consequently, when a member retires after reemployment with more than thirty years of total service, the third sentence of the statute permits the member to adjust the initial retirement allowance by reducing the service years used in the calculation by the total number of service years in excess of thirty, so the calculation of the second retirement allowance based on the period of reemployment can utilize those years in the event they will make the total allowance greater. Without this provision, the second retirement allowance could only use the number of years remaining after the original years of service during the original period of employment up to thirty.[5]

This procedure is important in interpreting the statute because it clearly reveals that the single retirement allowance given after retirement following reemployment is based on two separate calculations, which are then added together. That is, the calculation process described in the

---

[5]The operation of this procedure can be best described by using an example. Assume an employee initially worked for 20 years, then retired, then later became reemployed for 12 more years. Because the final retirement allowance can only be based on 30 years of service, 2 years of the employee's reemployment would essentially go to waste and could not be used in the "fraction of years of service" used as the multiplier in determining the retirement allowance. This is true because the fraction used to calculate the benefit amount for the period of reemployment could only be 10/30, instead of 12/30, since the fraction used to calculate the initial retirement benefit was 20/30. However, the legislature recognized that it may be more advantageous for the employee to have the final allowance calculated based on more of the reemployment years, as opposed to original employment years. Thus, instead of using 20/30 for the "fraction of years of service" used to calculate the benefit amount for the original employment, the statute allows the employee to reduce that fraction by a fraction in which the "extra" years of service are the numerator, and 30 is the denominator. This would then permit the retired member to use the full 12 years of service in the fraction used to calculate the benefit amount for the period of reemployment. So, in our example, the new fractions would be:

| *Fraction of Years of Service* | | | *Fraction of Years of Service* | |
| *for Original Employment* | | | *for Reemployment* | |
| *Was* | | *Now* | *Was* | *Now* |
| $\frac{20}{30}$ | $-\frac{2}{30}$ = | **$\frac{18}{30}$** | $\frac{10}{30}$ | **$\frac{12}{30}$** |

first two sentences reveals that the calculation of the second retirement benefit amount is based on the period of reemployment, which is then added to the initial retirement benefit amount for a total single allowance. Clearly, if the statute instead contemplated that the calculation was made after adding together the two periods of employment, as claimed by Thoms, it would be unnecessary for our legislature to implement the procedure described in the third sentence governing reemployment that covers total service years in excess of thirty years. In other words, it would be unnecessary to have a procedure to permit a retired member to allocate the thirty-years-of-service cap between the first period of service and the second period of service to come up with the most advantageous final retirement allowance if the two periods of employment were combined together anyway and the benefit was determined based on factors existing at the time of the second retirement. It would be unnecessary because the allowance for retirement after reemployment under that method of calculation would not change depending on the number of years of service allocated between the two periods. We will not read a statute so that any provision will be rendered superfluous. *See Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002) ("Each term [in a statute] is to be given effect, so that no single part is rendered insignificant or superfluous." (Citation omitted.)); 2A Singer § 46:06, at 181 ("'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.'").

The remainder of the statute only confirms this interpretation. In particular, the fourth sentence makes it clear that the additional (second) retirement allowance calculated for the reemployment period is "added"

to the initial retirement allowance, as adjusted, calculated for the initial period. *See* Iowa Code § 97B.48A(3) ("The additional retirement allowance calculated for the period of reemployment shall be added to the retirement allowance calculated for the initial period of membership service . . . , adjusted as provided in this subsection."). Any doubt cast by the first two sentences over the question whether the final allowance is calculated based on separate periods of service or a combination of the periods of service is amply resolved by considering the entire statute.

We conclude the interpretation of the statute by IPERS under its applicable rules and regulations reflects the intent of the legislature to calculate retirement benefits after reemployment separately on each period of employment. The district court correctly concluded that the interpretation by IPERS was not "irrational, illogical, or wholly unjustified." *Id.* § 17A.19(1)(*l*).

## IV. Conclusion

The decision by the district court on the petition for judicial review filed by Thoms was correct. IPERS correctly determined Thoms' monthly benefits by calculating one annuity based on his initial employment, and adding to it a second annuity based on his reemployment. Accordingly, we affirm.

**AFFIRMED.**