**IN THE SUPREME COURT OF IOWA**

No. 81/ 04-1763

Filed September 29, 2006

**CITY OF DES MOINES,**

Appellee,

vs.

**EMPLOYMENT APPEAL BOARD and
LABOR COMMISSIONER BYRON K. ORTON,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.

The employment appeal board and labor commissioner seek further review of an adverse ruling on the City's petition for judicial review. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Rick Autry, Des Moines, and Gail Sheridan-Lucht, Des Moines, for appellants.

Mark Godwin, Deputy City Attorney, Des Moines, for appellee.

**WIGGINS, Justice.**

The Iowa labor commissioner filed a complaint against the City of Des Moines (City) for two serious violations of the general industry Iowa occupational safety and health (IOSH) standards for permit-required confined spaces in connection with two deaths and five injuries occurring to the employees of a contractor while working on a sewer-relining project for the City. The employment appeal board found the City committed the two serious violations and assessed a total penalty of $9000. The City sought judicial review of the appeal board's decision. The district court reversed the decision of the appeal board. The appeal board and the labor commissioner appealed the district court's decision. We transferred the case to our court of appeals. The court of appeals affirmed the district court's decision. The appeal board and labor commissioner then sought further review, which we granted.

On further review, we find (1) the commissioner did not violate Iowa Code section 17A.3 (2001) when he used federal interpretations of the United States occupational safety and health administration (OSHA) standards as a guide in interpreting those standards; (2) the City's due process rights were not violated when the commissioner and the appeal board relied on the federal interpretations of the OSHA standards; (3) the appeal board was correct in its interpretation of the general industry permit-required confined spaces standards (29 C.F.R. section 1910.146); (4) substantial evidence supports the appeal board's conclusion that the general industry permit-required confined spaces standards were applicable to this sewer project; (5) the appeal board properly determined that the City was a "host employer" under 29 C.F.R. section

1910.146(c)(8)(i), (iii); and (6) substantial evidence supports the appeal board's decision that the City committed two serious violations.

In view of these conclusions, we vacate the decision of the court of appeals, reverse the district court's decision, and remand the case to the district court for an entry of judgment upholding the employment appeal board's decision.

## I. Background Facts and Proceedings.

Upon receiving a notice from the Iowa department of natural resources (DNR) of the presence of raw sewage in Dean's Lake, the City contracted with Insituform Technologies USA, Inc. to reline a portion of its sewer. Before receiving this notice, the City did not have any plans to work on the sewer. In July 2002, fumes from unidentified sewer gases overcame Insituform workers inside the City-owned sewer line. Two workers collapsed inside the sewer and drowned in pooling water. Five other workers were seriously injured in the incident.

The City's plan for the sewer project called for a sanitary sewer renovation using a cured-in-place pipe liner, sewer cleaning, reconnecting sewer services, by-pass pumping, and other related items. The plan required Insituform to insert a liner within an existing sewer pipe, expand the liner within the pipe, and cure it in place with heat. Insituform was also required to install fillets to reduce the sharp angles in the sewer and increase the liner's strength.

Prior to the start of this project, the City developed procedures relating to sewer entry consistent with the IOSH general industry standards for permit-required confined spaces. Insituform had a similar confined spaces entry plan for its employees.

A pre-construction meeting was held between City officials and Insituform representatives before work began in the sewer. At that meeting, the City did not discuss its permit-required confined spaces procedures with Insituform. From the start date of the actual work in the sewer to the date of the fatal accident, the City had an inspector at the work site virtually every day.

After the accident, the Iowa division of labor services occupational safety and health bureau investigated the circumstances surrounding the accident. After completing its investigation, the bureau cited the City for two serious violations. The first violation was based on 29 C.F.R. section 1910.146(c)(8)(i), as incorporated in Iowa's administrative rules, for the City's failure to inform Insituform that the sewer contained permit spaces and that permit space entry is allowed only through compliance with a permit space program. *See* Iowa Admin. Code r. 875—10.20(88). The City was also cited for a violation of the provisions in 29 C.F.R. section 1910.146(c)(8)(iii), as incorporated in Iowa's administrative rules, for its alleged failure to apprise Insituform of what precautions and procedures the City implemented to protect employees in or near permit spaces where Insituform personnel would be working. *See id.* The citation proposed a penalty of $4500 for each violation, or $9000 in total.

The City contested the citation. The commissioner filed a complaint with the employment appeal board. An administrative law judge presided over the hearing on the complaint. In addition to offering testimony and exhibits at the hearing, the parties stipulated that the City did not perform the actions required in 29 C.F.R. section 1910.146(c)(8)(i), (iii).

The administrative law judge entered a decision and proposed order affirming the violations concluding (1) the commissioner's reliance on federal interpretations of its OSHA standards in deciding what violations may have occurred did not amount to rulemaking in violation of Iowa Code section 17A.3; (2) the safety and health regulations for general industry promulgated under 29 C.F.R. part 1910 apply to the work in the sewer, rather than the safety and health regulations for construction employment promulgated under 29 C.F.R. part 1926; and (3) the City was a "host employer" under 29 C.F.R. section 1910.146(c)(8). The judge disagreed with the determination that the violations were serious violations, amended the violations to other than serious violations, and reduced the penalty to a total of $2500.

The City appealed the decision to the employment appeal board. The appeal board issued a decision and final order agreeing with the administrative law judge's decision as to the violations, but found the violations to be serious violations and reinstated the $9000 penalty.

The City petitioned the district court for judicial review. The district court reversed the appeal board's decision and voided the penalty. The court concluded the commissioner's reliance on the federal OSHA documents constituted an abuse of discretion and unlawful rulemaking, the work performed by Insituform was not governed by the general industry safety and health regulations promulgated under 29 C.F.R. part 1910, and the City was not a "host employer" under 29 C.F.R. section 1910.146(c)(8).

The appeal board and the commissioner appealed. We transferred the case to our court of appeals. Our court of appeals affirmed the district court's ruling concluding the commissioner's reliance on the

federal OSHA documents constituted an abuse of discretion and unlawful rulemaking in violation of Iowa Code section 17A.3, as such reliance was undisclosed and authoritative. Our court of appeals also found substantial evidence did not support the appeal board's decision approving the citation under the general industry standards. The court of appeals did not reach any other issues raised on appeal by the parties. The appeal board and commissioner filed an application for further review, which we granted.

## II. Issues.

To resolve this appeal we must decide whether: (1) the appeal board erred when it held the commissioner did not violate Iowa Code section 17A.3 when he used federal interpretations of the OSHA standards as a guide in interpreting those standards; (2) the City's due process rights were violated when the appeal board relied on the federal interpretations of the OSHA standards; (3) the appeal board erred in interpreting the general industry permit-required confined spaces standards (29 C.F.R. section 1910.146); (4) substantial evidence supports the appeal board's conclusion that the general industry permit-required confined spaces standards applied to the work in the sewer; (5) the board properly determined that the City was a "host employer" under 29 C.F.R. section 1910.146(c)(8)(i), (iii); and (6) substantial evidence supports the appeal board's decision to find the City committed two serious violations.

## III. Scope of Review.

When reviewing the decision of the district court on judicial review, "we must apply the standards set forth in [the Iowa Administrative Procedure Act] and determine whether our application of those standards

produces the same results as reached by the district court." *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 601 (Iowa 2004); *see also* Iowa Code § 88.9(1) (providing judicial review of occupational safety and health citations is in accordance with the Iowa Administrative Procedure Act). The Iowa Administrative Procedure Act allows the district court to reverse or modify an agency's decision only if it is incorrect under a ground specified in the Act, and a party's substantial rights have been prejudiced. Iowa Code § 17A.19(10). Neither party claims if we find one of the enumerated provisions in section 17A.19(10) exist, that the actions of the commissioner do not affect the substantial rights of the City. Because of the different nature of each issue raised on appeal, we will discuss the applicable standards of review as we discuss each issue.

### IV. Iowa Code Section 17A.3.

The Iowa legislature authorized the commissioner to adopt and promulgate occupational safety and health standards that the United States secretary of labor adopted and promulgated as permanent standards by and in accordance with federal law. Iowa Code § 88.5(1)(*a*). Pursuant to this authorization, the commissioner adopted parts of the federal OSHA standards governing general industry safety and health. Iowa Admin. Code r. 875—10.20(88). The commissioner also adopted parts of the federal OSHA standards governing construction employment. Iowa Admin. Code r. 875—10.12(88)(2). Although the sewer is a confined space as defined by the general industry safety and health standards, the permit-required confined spaces standards do not apply to construction employment. 29 C.F.R. § 1910.146(a) (adopted by Iowa Admin. Code r. 875—10.20(88)). Construction employment is governed by 29 C.F.R.

part 1926. IOSH regulations define construction employment as "work for construction, alteration, or repair." Iowa Admin. Code r. 875—10.12(88)(2).

The appeal board adopted the commissioner's interpretation. It found the work in the sewer was governed by the permit-required confined spaces standards contained in the general industry safety and health standards, rather than construction employment standards. In support of its decision, the appeal board relied on the testimony of Mary Bryant, IOSH administrator. In her testimony, Bryant looked to OSHA instruction CPL 2.100 and an OSHA standard interpretation to determine whether the general industry or the construction employment standards applied to the work in the sewer. The United States department of labor authored the instruction and the standard interpretation. CPL 2.100 discusses when the general industry safety and health standards apply to a project. The instruction states in relevant part:

> Generally speaking, refurbishing of existing equipment and space is maintenance; reconfiguration of space or installation of substantially new equipment (as for a process change) is usually construction. Those spaces identified under 1910.146(c) as permit spaces that are undergoing maintenance or modifications, which do not involve construction, would be subject to the General Industry standards.

> A confined space created during or as a result of construction activity or entered to perform construction activity would usually fall within the scope of the 29 CFR 1926 standards and the general duty clause until the space is turned over for General Industry operations.

> . . .

> The relining of a sewer line using a sleeve which is pushed through a section of the existing system is maintenance.

U.S. Dep't of Labor, Occupational Safety & Health Admin., *CPL 2.100 –*
*Application of the Permit-Required Confined Spaces (PRCS) Standards, 29*
*C.F.R. 1910.146* (May 5, 1995).

The standard interpretation expanded on the difference between
construction and maintenance operations. It provides:

> 29 CFR 1910.12(b) defines construction work as "work for
> construction, alteration, and/or repair, including painting
> and decorating." Generally speaking reconfiguration of
> space or installation of substantially new equipment is
> usually considered construction, whereas refurbishing of
> existing equipment and space is considered maintenance.

> Maintenance operations are covered by general industry
> standards contained in 29 CFR 1910 and construction
> activities are covered by the construction standards
> contained in 29 CFR 1926. While paragraph (a), scope and
> application, of 29 CFR 1910.146 does not apply to
> construction activities, it does not exclude contractors from
> coverage when performing maintenance type operations in
> confined spaces.

> Thus, if you are a contractor performing maintenance type
> activities for a host employer, compliance with 29 CFR
> 1910.146 is required. Some examples of maintenance
> operations would be:

> . . .

> Relining of a sewer line using a sleeve which is pushed
> through a section of the existing system.

U.S. Dep't of Labor, Occupational Safety & Health Admin., *Standard*
*Interpretations-Confined Spaces: Use of Rescue-Type SCBAs; Maintenance*
*v. Construction* (Apr. 12, 1996).

The City claims the commissioner's reliance on the OSHA
instruction and the standard interpretation is unlawful rulemaking
under the Iowa Code. The City also claims that the commissioner cannot
use the OSHA instruction and the standard interpretation because the

commissioner did not index them as required by the Code. The Code provides:

> In addition to other requirements imposed by Constitution or statute, each agency shall:
>
> . . .
>
> *b.* Adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available to the public, including a description of all forms and instructions that are to be used by the public in dealing with the agency.
>
> . . .
>
> *d.* Make available for public inspection all rules, and make available for public inspection and index by subject, all other written statements of law or policy, or interpretations formulated, adopted, or used by the agency in the discharge of its functions.
>
> 2. No agency rule or other written statement of law or policy, or interpretation, order, decision, or opinion is valid or effective against any person or party, nor shall it be invoked by the agency for any purpose, until it has been made available for public inspection and indexed as required by subsection 1, paragraphs "*d*" and "*e*". This provision is not applicable in favor of any person or party who has actual timely knowledge thereof and the burden of proving such knowledge shall be on the agency.

Iowa Code §§ 17A.3(1)(*b*), (*d*), 17A.3(2).

To decide this issue, we must interpret section 17A.3. The interpretation of a statute is always a matter of law to be determined by the court. *City of Marion v. Iowa Dep't of Revenue & Fin.*, 643 N.W.2d 205, 206 (Iowa 2002). However, under certain circumstances we are required to give some deference to the agency's interpretation. *Id.* Chapter 17A prescribes the amount of deference we should give to the view of an agency. Iowa Code § 17A.19(11). Because the legislature did not vest the interpretation of section 17A.3 with the agency, we do not

give any deference to the view of the agency and employ a correction-of-errors-at-law standard of review. *Id.* § 17A.19(10)(*b*); *Thoms v. Iowa Pub. Employees' Ret. Sys.*, 715 N.W.2d 7, 11 n.3 (Iowa 2006); *Auen v. Alcoholic Beverages Div., Iowa Dep't of Commerce*, 679 N.W.2d 586, 590-91 (Iowa 2004).

A purpose of Iowa Code section 17A.3 is to prevent secret agency rulemaking when the agency uses undisclosed but authoritative interpretations of law or policy. *Doe v. Iowa State Bd. of Physical Therapy & Occupational Therapy Exam'rs*, 320 N.W.2d 557, 561 (Iowa 1982). However, these provisions are not relevant unless the agency applies the undisclosed authoritative interpretations as a matter of law, rather than merely applying the interpretations as relevant to the factual situation. *See Ford v. Iowa Dep't of Human Servs.*, 500 N.W.2d 26, 29 (Iowa 1993).

Applying these considerations, we agree with the appeal board's decision that the commissioner's use of the OSHA instruction and the standard interpretation did not amount to unlawful rulemaking. The commissioner alleged in his complaint that the City violated the standards contained in 29 C.F.R. section 1910.146(c)(8)(i), (iii), not that it violated the OSHA instruction or the standard interpretation. The commissioner adopted the standards of 29 C.F.R. section 1910.146(c)(8)(i), (iii) using the required rulemaking procedures. These standards were properly indexed in the administrative code. *See* Iowa Admin. Code r. 875—10.20(88). Therefore, we also agree with the appeal board's decision that the commissioner's actions did not amount to the unlawful use of unindexed authorities.

The commissioner used the OSHA instruction and the standard interpretation as an aid in interpreting whether the City's inaction was governed by the general industry safety and health standards contained in 29 C.F.R. part 1910. Accordingly, the administrator did not use the OSHA instruction and standard interpretation to establish a rule of law in this proceeding. In making the determination whether the general industry safety and health standards, as contained in 29 C.F.R. part 1910, governed the City's inaction, the commissioner only applied the OSHA instruction and standard interpretation as relevant to this factual situation. *Cf. Anderson v. Iowa Dep't of Human Servs.,* 368 N.W.2d 104, 107-08 (Iowa 1985) (holding an agency could not use a policy found in a department's employee manual as the rule of law to determine a contested issue because the agency never adopted a rule containing such a policy).

### V. Due Process.

The City claims the commissioner's and appeal board's reliance on the OSHA instruction and the standard interpretation violated the due process guarantees of article I, section 9 of the Iowa constitution and the Fourteenth Amendment to the United States Constitution. Although the City raised the constitutional issue before the appeal board, the district court did not reach this issue, instead finding the other issues raised by the City were dispositive of the case. Under these circumstances we can review the City's due process claims on appeal. *See Anderson,* 368 N.W.2d at 107 (stating "[i]f the district court found one issue dispositive and did not address the other issues, we can scrutinize all issues in reviewing the rulings"). Our review of a constitutional issue raised by a

party in an agency proceeding is de novo. *ABC Disposal Sys., Inc.*, 681 N.W.2d at 605.

The notion of due process requires that "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9; U.S. Const. amends. V, XIV, § 1. We have stated that the state and federal due process clauses are interpreted the same, "including [when] . . . differentiating between 'procedural' and 'substantive' due process." *Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382, 397 (Iowa 2002). The City does not specify whether procedural or substantive due process applies, but claims because it did not have fair notice of what conduct is classified as prohibited a due process violation occurred.

We have held:

> Under the Due Process Clause, a civil statute is unconstitutionally vague "when its language does not convey a sufficiently definite warning of the proscribed conduct." The legal test for determining vagueness is: "[i]f the statute's meaning is fairly ascertainable by reliance on generally accepted and common meaning of words used, or by reference to the dictionary, related or similar statutes, the common law, or previous judicial constructions, due process is satisfied." There is a presumption of constitutionality and a litigant can only rebut this presumption by "negating every reasonable basis on which the statute can be sustained." "Literal exactitude or precision is not required." "A statute is not unconstitutionally vague merely because a key word has not been specifically defined." To avoid a rule from unduly restricting the regulation of certain matters, a certain degree of indefiniteness is necessary.

*ABC Disposal Sys., Inc.*, 681 N.W.2d at 605 (citations omitted).

As we previously determined, the rules of law applicable to this agency proceeding are contained in 29 C.F.R. parts 1910 and 1926, as incorporated in Iowa's administrative rules. The commissioner used the

OSHA instruction and standard interpretation as relevant authority to interpret and apply the standards to the facts of this case. The commissioner's reliance on these and like authorities is no different than if he relied on case law, similar statutes, or previous agencies' construction of 29 C.F.R. parts 1910 and 1926.

The OSHA instruction and standard interpretation are public documents readily available on OSHA's website. U.S. Dep't of Labor, Occupational Safety & Health Admin., http://www.osha.gov (last visited Sept. 28, 2006). Additionally, OSHA instruction CPL 2.100 has been cited in federal occupational safety health review commission decisions. *See, e.g., Sec'y of Labor v. Drexel Chem. Co.*, 18 O.S.H. Cas. (BNA) ¶ 31,260, at 43,873 (Mar. 3, 1997). The use of the OSHA instruction and standard interpretation does not violate due process guarantees because the City had fair notice of what conduct is classified as prohibited. Therefore, neither the commissioner's nor the appeal board's use of the OSHA instruction and standard interpretation violated the City's due process guarantees under article I, section 9 of the Iowa constitution or the Fourteenth Amendment to the United States Constitution.

**VI. Interpretation of the General Industry Standards.**

The appeal board interpreted the IOSH standards and concluded that the general industry permit-required confined spaces standards were applicable to this sewer project, rather than the construction employment standards. The City contends the board erred in applying the general industry permit-required confined spaces standards. We disagree.

The legislature gave the labor commissioner the authority to promulgate Iowa's occupational safety and health standards. Iowa Code § 88.5(1)(*a*). The legislature also made all determinations regarding the issuance of a standard by the commissioner conclusive if substantial evidence supports the standard. *Id.* § 88.5(10). This legislative authority vests the interpretation of standards with the Iowa department of labor. *Thomes*, 715 N.W.2d at 11-12 (Iowa 2006). Accordingly, we will give appropriate deference to the agency's interpretation of the standards and reverse the agency's action if it is based on an interpretation of law that is "irrational, illogical, or wholly unjustified." Iowa Code §§ 17A.19(10)(*l*), 17A.19(11)(*c*).

To aid it in its interpretation of 29 C.F.R. parts 1910 and 1926, the commissioner relied on OSHA instruction CPL 2.100 and a standard interpretation. We find nothing wrong with the agency's reliance on these documents. The federal occupational safety health review commission has found it proper for OSHA to rely on similar documents to support its interpretation of a safety standard. *See Drexel*, 18 O.S.H. Cas. (BNA) at 43,875 n.3 (citing numerous decisions where the federal agency relied on CPLs to support interpretations of standards).

Additionally, the City introduced its own standard interpretation in support of its case. U.S. Dep't of Labor, Occupational Safety & Health Admin., *Standard Interpretations – Construction v. Maintenance* (Aug. 11, 1994). This interpretation is consistent with the OSHA instruction and the standard interpretation relied on by the commissioner. It provides in relevant part that:

> There is no specified definition for "maintenance," nor a clear distinction between terms such as "maintenance," "repair,"

or "refurbishment." "Maintenance activities" can be defined as making or keeping a structure, fixture or foundation (substrates) in proper condition in a routine, scheduled, or anticipated fashion. This definition implies "Keeping equipment working in its *existing* state, i.e., preventing its failure or decline." However, this definition, (taken from the directive on confined spaces) is not dispositive; and, consequently, determinations of whether a contractor is engaged in maintenance operations rather than construction activities must be made on a case-by-case basis, taking into account all information available at a particular site.

. . .

In other instances, where an activity cannot be easily classified as construction or maintenance even when measured against all of the above factors, the activity should be classified so as to allow application of the more protective 1910 or 1926 standard, depending on the hazard. In such cases, the citation should be issued in the alternative with the emphasis on the more protective standard.

*Id.*

In other words, because there is no bright line rule to determine whether an activity is maintenance or repair, we must look at the facts of each case to determine whether the task being performed was repair or maintenance. If the question is close as to whether the work constitutes repair or maintenance, the agency should apply the standards that provide more protection to the employees, depending on the hazard.

Therefore, we cannot say the board's interpretation of the IOSH standards was "irrational, illogical, or wholly unjustified" when it interpreted the standards and applied the more protective general industry permit-required confined spaces standards contained in 29 C.F.R. part 1910.

## VII. Substantial Evidence Analysis.

Having determined the agency's interpretation of 29 C.F.R. parts 1910 and 1926 is not "irrational, illogical, or wholly unjustified," we must

now determine if substantial evidence supports the board's decision that the general industry permit-required confined spaces standards apply to this case. Iowa Code §§ 17A.19(10)(*f*), 88.8(3). "The [agency's] factual findings are binding on this court if supported by substantial evidence." *United Fire & Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 677 N.W.2d 755, 759 (Iowa 2004). Our inquiry is whether the evidence supports the findings made by the agency, not whether the evidence may support a different finding. *Munson v. Iowa Dep't of Transp.*, 513 N.W.2d 722, 723 (Iowa 1994) (citing *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 846 (Iowa 1991)).

The record supports a finding that during the investigation of an oil/water mixture in Dean's Lake, the DNR discovered the City discharged raw sewage into the lake. A City maintenance worker informed the DNR the discharge occurred when a contractor removed sludge during an upgrade of a sewer box containing sewer lines for both storm water and sewage. The DNR's investigation concluded the leakage

> did not occur due to mechanical failure or acts beyond the control of the owner, [rather] it occurred due to the failure [of the City] to have a contingency plan in place in case the lines failed during the upgrade of the sewer box.

To remedy the problem, the DNR required the City to "[s]ubmit a written plan for sewer box repairs [and] upgrades that will eliminate the potential for future prohibited bypasses and discharges."

In response to this requirement, the City developed a plan to reline the East Twentieth Street sanitary sewer. The relining plan shows that the existing sanitary and storm sewers are contained in one rectangular sewer box. A six-inch-thick concrete common wall separates the two sewers. The sanitary sewer routes raw sewage to the City's wastewater

treatment plant, while the storm sewer routes rainwater and other run-off to natural waterways.

Although the DNR alerted the City to the discharge problem, this fact alone does not determine whether work on the sewer can be classified as repair or maintenance. The relining plan did not involve a repair to a specific area of the sewer where leakage may have occurred. Instead, the plan shows the City chose to reline all 6800 lineal feet of the sanitary sewer with a cured-in-place pipe liner. The plan also required the existing walls of the sanitary sewer to provide the structural support for the lining. The liner could not function without the existing sewer walls because it relied upon the existing structure of the sewer for its support and integrity. Other than enlarging two manhole covers, the contractor made no other structural changes to the sanitary sewer. During the relining of the sewer, the contractor was required to maintain the flow of waste through the system.

In order to place the liner in the existing sewer, Insituform's employees were required to enter the sewer. For the hazards the workers encountered in the sewer, the permit-required confined spaces standards provide more protection than the construction employment standards.

Examining the sewer project in this light, we conclude the record supports the finding that the City was maintaining the existing sewer line because the work done in the sewer was not to fix a specific defect in the sewer, but rather to refurbish it by keeping it in good working order. Accordingly, substantial evidence supports the commissioner's interpretation and the appeal board's finding that the general industry permit-required confined spaces standards apply to this case rather than the construction employment standards.

### VIII.  Host Employer Violations.

The commissioner's complaint alleges the City violated 29 C.F.R. section 1910.146(c)(8)(i), (iii), as incorporated in Iowa's administrative rules.  These standards provide:

> When an employer (host employer) arranges to have employees of another employer (contractor) perform work that involves permit space entry, the host employer shall:
>
> (i) Inform the contractor that the workplace contains permit spaces and that permit space entry is allowed only through compliance with a permit space program meeting the requirements of this section;
>
> . . .
>
> (iii) Apprise the contractor of any precautions or procedures that the host employer has implemented for the protection of employees in or near permit spaces where contractor personnel will be working[.]

29 C.F.R. § 1910.146(c)(8)(i), (iii).  Although the City stipulated that it did not comply with the duties created by these standards, the City claims it is not required to comply with any duties under these standards because it is not a "host employer."  We disagree.

By giving the commissioner both the authority to promulgate Iowa's occupational safety and health standards and the ability to make conclusive all determinations regarding the issuance of a standard, if supported by substantial evidence, the legislature vested the interpretation of standards with the commissioner.  Iowa Code §§ 88.5(1)(*a*), 88.5(10).  As we did in division VI of this opinion, we will give appropriate deference to the agency's interpretation of the standards and will only reverse the agency's action based on an interpretation of law that is "irrational, illogical, or wholly unjustified."  *Id.* §§ 17A.19(10)(*l*), 17A.19(11)(*c*).

The same rules of interpretation that apply to statutes apply to regulations of an administrative agency. *City of Iowa City v. State Bldg. Code Bd. of Rev.,* 663 N.W.2d 868, 871 (Iowa 2003). The purpose of statutory construction is to determine legislative intent. *State v. McCoy,* 618 N.W.2d 324, 325 (Iowa 2000). The words chosen by the legislature, not what it should or might have said determine legislative intent. *Painters & Allied Trades Local Union v. City of Des Moines,* 451 N.W.2d 825, 826 (Iowa 1990). Words are given their ordinary and common meaning by considering the context within which they are used absent a statutory definition or an established meaning in the law. *Midwest Auto. III, L.L.C. v. Iowa Dep't of Transp.,* 646 N.W.2d 417, 426 (Iowa 2002). In addition, we may consider the legislative history of a statute when ascertaining legislative intent. *State v. Allen,* 708 N.W.2d 361, 366 (Iowa 2006).

Despite a list of definitions set forth in 29 C.F.R. section 1910.146(b), there is no definition for "host employer." *See generally* 29 C.F.R. § 1910.146(b). The common meaning of "host" is a person or entity that invites guests onto its premises. *See Webster's Third International Dictionary* 1094 (unabr. ed. 2002) (defining host as "one who receives or entertains guests or strangers socially or commercially"). It is clear from the context of the standards, "host employer" means an employer that has another employer's employees perform work on the first employer's premises. Not only does the common understanding of the word "host" require this interpretation, the legislative history of the standard confirms this interpretation.

Legislative history contained in the Federal Register confirms that a host employer is an employer that has another employer's employees

perform work on the first employer's premises. Permit Required Confined Spaces, 59 Fed. Reg. 24,080, 24,091 (June 5, 1989) (codified at 29 C.F.R. pt. 1910). The United States department of labor in a notice of proposed rulemaking regarding 29 C.F.R. part 1910 indicated a host employer is the individual who controlled the permit-required confined spaces. *See id.* (stating "[p]roposed (c)(10) requires *individuals who control permit spaces* (host employer) to provide contractors (or similar employers) who plan to have employees enter these permit spaces with all available information on permit space hazards; on efforts to comply with the standard; and on any other hazards, safety rules or emergency procedures" (emphasis added)). In a later notice of proposed rulemaking regarding 29 C.F.R. part 1910 the department disclosed it received a comment from its advisory committee on construction safety and health requesting that the work site owner or the host employer be responsible for compliance with the proposed rule. Occupational Exposure to Methylene Chloride, 57 Fed. Reg. 36,964, 36,967 (Aug. 17, 1992) (codified at 29 C.F.R. pts. 1910, 1915, 1926) (stating "the Committee suggested that the Agency consider designating the *work site owner*, or 'host' employer as being responsible for overall work site safety" (emphasis added)).

Finally, when OSHA issued its final rules for 29 C.F.R. part 1910, it explained the purpose of 29 C.F.R. section 1910.146(c)(8) is to "enable . . . contractors to develop and implement permit space programs that satisfy section 1910.146." Permit-Required Confined Spaces, 59 Fed. Reg. 4462, 4492 (Jan. 14, 1993). In referring to the obligations of the host employer, one commenter referred to the host employer as host company. *Id.* (stating "[i]n many circumstances, it is absolutely vital to

the safety of all workers that confined space entries in existing process facilities remain under the close control of the *host company*, using one common and consistent set of procedures established for the facility, conforming to the OSHA rule" (emphasis added)). Another rulemaking participant equated the host employer to the owner/operator. *Id.* at 4493 (stating "OSHA should recognize that *the owner/operator* may not have expertise in confined space entry and may only be able to provide the contractor with a list of chemicals, their MSDSs and physical information on the confined space. The *owner/operator* may be hiring an experienced contractor to perform the work precisely because he recognizes that he does not have the expertise to perform the task safely. In such a situation, the owner could not be expected to advise the contractor." (Emphasis added.))

The record establishes the City was the owner of the sewer lines where Insituform's employees performed the work. Based on the clear meaning of the words used in the standards and the legislative history we cannot say the commissioner's interpretation and appeal board's determination that the City is a "host employer" under 29 C.F.R. section 1910.146(c)(8) is "irrational, illogical, or wholly unjustified."

**IX. Penalties.**

The commissioner alleged the violations by the City of 29 C.F.R. section 1910.146(c)(8)(i), (iii) constituted serious violations under Iowa Code section 88.14(2). The appeal board agreed with the commissioner's determination. The City claims substantial evidence does not support these findings. Our review of the record reveals substantial evidence supports the appeal board's findings that these two violations are serious violations.

> [A] serious violation shall be deemed to exist in a place of employment if there is substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

Iowa Code § 88.14(11). The purpose of the host employer standards is twofold. First, the standards provide each contractor who works in a permit-required space owned by another the local knowledge gained by the owner, thereby furthering compliance with the general industry standards. Second, the standards inform each contractor of any hazards, safety rules, or emergency procedures that the owner identified regarding the owner's permit-required confined spaces. Permit Required Confined Spaces, 54 Fed. Reg. at 24,091.

The City recognized that working in the sewers created a substantial probability of death or serious physical harm and developed its own sewer confined space entry procedures as required by the general industry permit-required confined spaces standards. The City distributed these standards to all City employees who entered its sewers.

Virtually every day, the City had an inspector at the work site. The City should have known through the exercise of reasonable diligence that it was a "host employer" under the permit-required confined spaces standards, and therefore required to provide certain information to Insituform before Insituform employees entered the sewer. The City also should have known that the employees of Insituform entered the sewer and when in the sewer, the workers were exposed to a substantial probability of death or serious physical harm.

Accordingly, there is substantial evidence supporting the appeal board's determination that the City's violations were serious violations.

### X. Conclusion and Disposition.

In conclusion, we find (1) the commissioner did not violate Iowa Code section 17A.3 when he used federal interpretations of the OSHA standards as a guide in interpreting those standards; (2) the City's due process rights were not violated when the commissioner and the appeal board relied on the federal interpretations of the OSHA standards; (3) the appeal board was correct in its interpretation of the general industry permit-required confined spaces standards (29 C.F.R. section 1910.146); (4) substantial evidence supports the appeal board's conclusion that the general industry permit-required confined spaces standards were applicable to this sewer project; (5) the appeal board properly determined that the City was a "host employer" under 29 C.F.R. section 1910.146(c)(8)(i), (iii); and (6) substantial evidence supports the appeal board's decision that the City committed two serious violations.

Accordingly, the district court should have affirmed the employment appeal board's decision. Therefore, we vacate the decision of the court of appeals, reverse the district court's decision, and remand the case to the district court for an entry of judgment upholding the appeal board's decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**