**STATE of Iowa, Appellee,**

v.

**Drew Everett YOUNG, Appellant.**

**No. 03–0673.**

Supreme Court of Iowa.

Sept. 1, 2004.

James Martin Davis of Davis & Finley, Omaha, NE, and Dean A. Stowers of Rosenberg, Stowers & Morse, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Cristen C. Odell and Scott Brown, Assistant Attorneys General, and Marci L. Prier, County Attorney, for appellee.

WIGGINS, Justice.

Drew Young fired shots at law enforcement officers in an attempt to commit "suicide by police." The district court convicted him of attempted murder, assault with intent to inflict serious injury, and willful injury. He appealed the attempted murder conviction. He argued the district court convicted him on a lower standard than required by the Iowa Code. The court of appeals agreed and vacated the conviction. We granted the State's application

for further review. We hold the district court applied the appropriate standard under the statute. We, therefore, vacate the court of appeals decision and affirm the district court.

## I. Facts and Prior Proceedings.

On the evening of April 4, 2002, apparently consumed with guilt over his addiction to child pornography, Young had begun drinking earlier in the evening. Soon after, he shot at law enforcement officers, hoping to draw their fire and thereby commit "suicide by police." Deputy Sheriff Eugene Goos and police officer Gary Chambers, each driving separate law enforcement vehicles, responded to a dispatch call about an armed and suicidal man.

As Goos arrived at the scene, Young shot out Goos's left driver's window, the left side passenger window, and shot through the passenger side of the front windshield with his 223 caliber assault rifle. Young also shot out Chambers' front passenger window. In the end, Young had fired twenty-four rounds—hitting five cars, several houses, and Goos. Goos received injuries to his left shoulder, head, and left thumb. Consequently, part of his thumb was amputated, and he has bullet fragments and glass shards embedded in his face and shoulders.

The State ultimately charged Young with two counts of attempted murder, one count of first-degree burglary, and one count of willful injury. Young waived his right to a jury trial. The district court, sitting without a jury, convicted Young of attempted murder, assault with intent to inflict serious injury as an included offense of attempted murder, and willful injury. The district court found Young not guilty of the crime of burglary. The district court sentenced Young to a term not to exceed twenty-five years for attempted murder, a term not to exceed ten years for willful injury, and a term not to exceed two years for assault with intent to inflict serious injury. The district court ordered Young to serve the three sentences concurrently.

Young appealed the attempted-murder conviction, arguing because the district court relied on the language of the uniform criminal jury instruction, it convicted him under a lower standard than that set forth in Iowa Code section 707.11 (2001). The court of appeals agreed and vacated his conviction, holding although the district court made an express finding and conclusion of Young's intent to kill, it failed to make an express finding and conclusion that Young would achieve his intention. The court of appeals remanded the case to the district court for new findings of fact, conclusions of law, and judgment on the existing record consistent with its opinion. We granted the State's application for further review.

## II. Analysis.

Our review is for correction of errors at law. Iowa R.App. P. 6.4. According to Iowa Code section 707.11,

[a] person commits a class "B" felony when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which *will cause* or result in the death of the other person.

It is not a defense to an indictment for attempt to commit murder that the acts proved could not have caused the death of any person, provided that the actor intended to cause the death of some person by so acting....

(Emphasis added.) The district court appeared to rely on Iowa Uniform Criminal

Jury Instruction No. 700.19 in defining the elements of attempted murder. This uniform instruction provides:

> The State must prove all the following elements of attempt to commit murder:
>
> 1. On or about the ___ day of _____, 20__, the defendant (set forth acts committed).
> 2. By [his] [her] acts, the defendant expected to set in motion a force or chain of events *which could have caused or resulted in* the death of (victim).
> 3. When the defendant acted, [he] [she] specifically intended to cause the death of (victim).

I Iowa Crim. Jury Instruction 700.19 (2003) (emphasis added). In borrowing from the wording of the uniform instruction, the district court determined in order for Young to be guilty of attempted murder, the State must establish:

> 1. That on or about April 5, 2002, the defendant fired gunshots at Eugene Goos;
> 2. By such acts the defendant expected to set in motion a force or chain of events which *could have caused* or resulted in the death of Eugene Goos; and
> 3. When the defendant acted, he specifically intended to cause the death of Eugene Goos.

(Emphasis added.) Regarding elements 2 and 3, the issues of Young's expectations and specific intent, the district court expressly found and concluded:

> The defendant, an expert marksman, fired multiple shots directly at the driver's area of the sheriff's cruiser. . . . The shots struck Deputy Goos as he was seated in the driver's seat operating his vehicle. Fortunately, Deputy Goos was not killed. Had defendant not intended to kill Deputy Goos he could have fired shots into the air, into the ground, or even into other parts of the vehicle. This court concludes that the defendant intended the natural results of his acts—those acts were the bursts of gunfire directly at Deputy Goos. The natural result of the acts would be the death of or serious injury to Deputy Goos. This evidence belies defendant's statement as to his intent, and establishes beyond a reasonable doubt elements 2 and 3.
>
> Without accepting defendant's position that he wanted the law enforcement officers to shoot him, the court notes that its findings as to the specific intent of the defendant are not inconsistent with his claimed motive. He may well have wanted to attract such attention as to cause a law enforcement agent to shoot him; attempting to kill or seriously injure an officer might well be expected to accomplish his intended mission. Being suicidal does not preclude one from forming a specific intent to kill or seriously injure.

Young claims because the statute contains the language, "the person does any act by which the person expects to set in motion a force or chain of events which *will cause* or result in the death of the other person," the district court's use of the language, "which *could have caused* or resulted in the death of Eugene Goos," in element 2 allowed the district court to convict him by relying on an incorrect element of the crime. He argues the past tense of "will" is "would" and therefore the trial court should have considered whether Young's actions *would* have killed the deputy, not whether they could have. He contends that "will" connotes certainty, while "could" connotes speculation or uncertainty. Thus, he argues "could have caused" sets a lower standard than "will cause."

 When interpreting statutes, we look at the statute as a whole, rather than

isolated words or phrases. *See City of Nevada v. Slemmons*, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794 (1953) (stating "it is a cardinal principle of statutory construction that the [legislative] intent is to be gleaned from the whole statute ... and not from any particular part"). To be guilty of attempted murder the statute requires (1) a specific intent to cause the death of another and (2) an overt act in furtherance of the required specific intent. Iowa Code § 707.11.

The language of the statute, "the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person," defines the type of overt act that is in furtherance of the required specific intent to commit attempted murder. The second paragraph of section 707.11 supports this interpretation of the statute, as it indicates that "will cause" qualifies the type of overt act in furtherance of the required specific intent necessary to support a conviction for attempted murder. More importantly, this paragraph aids us in resolving the primary issue before us: whether the district court correctly applied the statute to Young's conduct.

■ The second paragraph of section 707.11 makes clear that "will cause" refers to the actor's expectation of the consequences of his or her act, not the probability of the act's success. Other authorities hold that factual possibility is unnecessary to find an act was in furtherance of the required specific intent necessary to support a conviction for attempted murder. *See People v. Vang*, 87 Cal.App.4th 554, 563–64, 104 Cal.Rptr.2d 704 (2001) (holding defendant's act of firing a loaded gun at a residence after the intended victim had moved constituted an act in furtherance of

the required specific intent to commit attempted murder); *People v. Ng*, 156 Mich. App. 779, 402 N.W.2d 500, 504 (1986) (holding defendant's act of mailing a defective bomb constituted an act in furtherance of the required specific intent to commit attempted murder); *State v. Mitchell*, 170 Mo. 633, 71 S.W. 175, 177 (1902) (holding defendant's act of firing a loaded gun at empty bed constituted an act in furtherance of the required specific intent to commit attempted murder); *State v. Damms*, 9 Wis.2d 183, 100 N.W.2d 592, 594–96 (1960) (holding defendant's act of firing an unloaded gun, which the defendant believed was loaded, constituted an act in furtherance of the required specific intent to commit attempted murder). Likewise, we hold that "will cause" in section 707.11 refers to the type of act that is in furtherance of the required specific intent to commit the crime of attempted murder, thus factual possibility or probability of success is utterly irrelevant to that analysis.

Accordingly, the district court properly considered whether Young carried out an act in furtherance of the required specific intent to commit the crime of attempted murder. The district court specifically concluded:

> Had defendant not intended to kill Deputy Goos he could have fired shots into the air, into the ground, or even into other parts of the vehicle. This court concludes that the *defendant intended the natural result of his act—those acts were the bursts of gunfire directed at Deputy Goos. The natural result of the acts would be the death of or serious injury to Deputy Goos.*

(Emphasis added.) Thus, the district court properly addressed whether Young's act of shooting his assault rifle at Goos' vehicle was the type of act that would

further the specific intent to commit attempted murder, rather than speculating about the factual probability that the act would accomplish the deed.[1]

The uniform instruction quoted by the district court in its decision explained the defendant's expectations of his act in terms of "which could have caused or resulted in the death of Eugene Goos," rather than using "which would have caused or resulted in the death of Eugene Goos." Defendant claims this was error. As we previously stated, factual possibility or probability that the action will be successful is irrelevant to the analysis; thus, "could" and "would" are interchangeable in determining Young's expectations.[2] To avoid this confusion in the future, the language of the uniform jury instruction should probably more closely follow the language used by the legislature in section 707.11.[3]

### III. Disposition.

Because we find the district court properly analyzed the evidence under the statute, finding Young had the specific intent to cause the death of Goos and committed an overt act in furtherance of the required specific intent, we vacate the court of appeals decision and reinstate the verdict of the district court.

1. Contrary to Young's argument, the district court found his act "would," rather than "could," cause death. Hence, even under his argument we would affirm the district court.

2. As the Texas Court of Appeals noted, "[W]e observe that both 'can' and 'will' may be used to denote ability, and that in common usage, these words and their past tense forms, 'could' and 'would,' are sometimes used interchangeably." Shaver v. Brock, 800 S.W.2d 657, 659 n. 2 (Tex.Ct.App.1990) (citations omitted).

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Larson, J., who takes no part.

3. For example, the second element of the instruction could state:

> At the time the defendant (describe act), the defendant expects to set in motion a force or chain of events which will cause or result in the death of (name of victim).

> When applicable the district court should use a separate instruction to explain that, even if the defendant proves the defendant's act could not have caused the death of any person, this element is established if the defendant intended to cause the death of some person by so acting.