## IN THE COURT OF APPEALS OF IOWA

No. 12-2122
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARIO GUERRERO CORDERO,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        A defendant appeals his convictions for murder in the first degree and

attempt to commit murder. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Bradley M. Bender,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney

General, John Sarcone, County Attorney, and Jaki Livingston, Assistant County

Attorney, for appellee.


        Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Mario Guerrero Cordero appeals his convictions for murder in the first degree and attempt to commit murder. While Cordero does not deny he shot the victims, on appeal he raises questions regarding his intoxication. Cordero argues the State presented insufficient evidence to convict him of the crimes. Cordero also contends the district court erred in refusing his request for a jury instruction relating to the intoxication defense. Cordero further claims counsel rendered ineffective assistance by failing to file a notice of intoxication defense. Finally, Cordero contends the court failed to give sufficient reasoning to support the imposition of consecutive sentences.

We affirm Cordero's convictions, finding the evidence presented at trial was sufficient to support the elements of murder in the first degree and attempt to commit murder. Additionally, while Cordero was entitled to a jury instruction on intoxication, he cannot show his defense was hampered by its absence. Furthermore, Cordero was not prejudiced by his counsel's failure to file a notice of intoxication defense. Finally, the district court provided adequate reasons for imposing consecutive sentences.

## I.    Background Facts and Proceedings

For the friends and family of Miguel Cano Basurto and Hector Casillas, the Fourth of July 2008 turned from a day of celebration to a day of tragedy. That afternoon, Mario Guerrero Cordero entered a Des Moines automotive repair shop where several young men were gathered to drink beer and enjoy the holiday. Upon entering, Cordero pulled a chrome handgun from his waistband, pointed it

at Miguel, and fired multiple shots, killing him. As Cordero left the building, he shot at the fleeing Casillas until running out of bullets. Casillas was hospitalized and survived, despite wounds to the foot and back.

Cordero's motivation for the shooting dated back several months. In May 2008, Cordero, who is distantly related to Miguel and Manual Cano Basurto,[1] damaged a customer's truck at the repair shop named El Tarasco's where the brothers worked. Cordero's failure to pay for the damage upset Miguel, causing bad blood between them. Their feud came to a head on the Fourth of July.

Miguel and Manual went to work at El Tarasco's that morning. The brothers hoped to get some work done before celebrating the holiday with friends and family, but others soon arrived. When Cordero showed up to join the celebration, Manual and Miguel asked him to leave. Cordero began to argue with Miguel out of sight of the others. Miguel insulted Cordero's family and challenged Cordero to a fight. Despite Miguel offering to "throw down," no physical fight occurred and Cordero instead left the shop as requested.

After leaving El Tarasco's, Cordero went to a different automotive repair shop, which was owned by Rogelio Carlos Basurto. Cordero joined others gathered at that shop to drink beer and socialize during the early afternoon. Basurto noticed Cordero was carrying a handgun in his waistband. Cordero showed the gun to Basurto and the others, explaining he wanted to shoot Miguel because Miguel had insulted him. Cordero explained, "The other day I would

---

[1] Because brothers Miguel Cano Basurto and Manual Cano Basurto share a last name, each will be identified by his first name.

have shot Miguel. I just didn't do it because he's family." After being advised to put the gun away, Cordero loaded it and put it back into his waistband.

Cordero returned to El Tarasco's later in the afternoon.[2] Cordero entered the building where everyone was gathered and said, "What's up?" He then pulled out the gun from his waistband and started firing shots at Miguel. After Miguel was hit by several shots and fell to the floor, Cordero started firing at others gathered in the shop. On his way out, Cordero came across Casillas, who was running out the front door. Cordero shot Casillas in the foot, which caused Casillas to fall. As Casillas returned to his feet trying to run away, Cordero shot him in the back. Cordero continued shooting until he was out of bullets, at which point he fled the scene in a car. Casillas was taken to the hospital for surgery. Miguel died shortly after being transferred to the hospital trauma center.

Detectives discovered where Cordero lived and, executing a search warrant, found the pistol, ammunition, and a spare magazine. Testing revealed five of the seven recovered bullets—including the bullet recovered from Miguel's body—had been fired by this pistol. Detectives learned Cordero had travelled to Lincoln, Nebraska, and purchased a bus ticket to Mexico using an assumed name. After detectives obtained an INTERPOL warrant, authorities arrested Cordero in Mexico and extradited him to the United States in 2011. The State charged Cordero with murder in the first degree and attempt to commit murder. *See* Iowa Code §§ 707.1, 707.2, 707.11 (2007).

---

[2] Testimony suggested Cordero returned anywhere from ten minutes to two hours later.

Cordero's jury trial started on September 14, 2012. At the close of the State's case-in-chief, Cordero moved for a judgment of acquittal on both charges, claiming the submitted evidence did not establish he had the specific intent to commit either crime. The court denied the motion.

Before jury deliberations, Cordero requested the court instruct the jury on the defense of intoxication. Ruling the evidence had not risen to the point where an intoxication instruction "would be or should be given," the court denied the request. After the court rejected Cordero's renewed motion for judgment of acquittal, a jury found him guilty of both charges. The court sentenced Cordero to life imprisonment without the possibility of parole for the charge of murder in the first degree and twenty-five years (with parole eligibility after serving seven-tenths of the sentence) for attempt to commit murder. The court ordered these sentences to be served consecutively.

Cordero appeals, asking us to reverse and remand for a new trial, or to enter an order dismissing the charges, and alternatively, he seeks resentencing.

## II. Standards of Review

We review challenges to the sufficiency of the evidence for errors at law. *State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001). We will uphold a jury verdict if substantial evidence supports it. *Id.* "Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt." *State v. Mitchell*, 568 N.W.2d 493, 502 (Iowa 1997). We view the record evidence and "legitimate inferences and presumptions that may fairly and reasonably be deduced from [it]" in the light most favorable to the State. *Id.* The

State must prove every fact necessary to constitute the charged crimes. *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002). "The evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *Id.*

We review challenges to jury instructions generally for correction of errors at law. *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010). "We review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006). Abuses occur "when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010).

Because claims of ineffective assistance of counsel are constitutional challenges, we review de novo. *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010). De novo review requires "independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Howard*, 509 N.W.2d 764, 767 (Iowa 1993). Claims of ineffective assistance of counsel are normally preserved for postconviction-relief proceedings so an adequate record of the claims can be developed and the attorney can have an opportunity to respond to the claims, *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002), but we may resolve a claim on direct appeal if the record is adequate. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

Finally, we review sentencing challenges for the correction of legal error. *State v. Morris*, 416 N.W.2d 688, 689 (Iowa 1987). When a sentence is within

statutory limits, we review it for an abuse of discretion. *State v. Neary*, 470 N.W.2d 27, 29 (Iowa 1991).

## III. Analysis

### A. Sufficient Evidence

Cordero contends the State offered insufficient evidence to allow a reasonable fact finder to conclude he committed the crimes of murder in the first degree and attempt to commit murder. Before deciding the merit of this claim, we must first determine whether it has been preserved. At the conclusion of trial, Cordero moved for a judgment of acquittal, claiming "as to the element of specific intent on both counts . . . there has been an absence of direct or circumstantial evidence as it pertains [to] the specific intent of Mario-Guerroro Cordero . . . ." On appeal, Cordero argues the shooting occurred because of his "sudden, violent and irresistible passion resulting from Miguel's provocation" and that provocation coupled with Cordero's intoxication prevented him from forming the specific intent for either crime. We will assume Cordero preserved error to reach the merits of his argument. *See State v. Smitherman*, 733 N.W.2d 341, 349 (Iowa 2007).

We turn to whether substantial evidence supported the jury verdicts. *See Webb*, 648 N.W.2d at 75. The disputed element for the charge of murder in the first degree is whether, as stated in the jury instructions, Cordero "acted willfully, deliberately, premeditatedly and with a specific intent to kill Miguel Cano [Basurto]." Similarly, the disputed element for the charge of attempt to commit

murder is whether, "[w]hen [Cordero] acted, he specifically intended to cause the death of Hector Casillas."

The State presented evidence that before the shooting Cordero expressed his desire to kill Miguel because Miguel had insulted him. Showing his gun to people gathered at a repair shop, Cordero said, "The other day I would have shot Miguel. I just didn't do it because he's family." Additionally, the State presented evidence of an argument between Miguel and Cordero on the morning of the shooting. The State also presented the testimony of one eyewitness who recalled, "[Cordero] came in through the front entrance and said that he was going to kill Miguel and shot him." Expert testimony established the gun's "fairly heavy" trigger pull and recoil, which would require Cordero to re-aim between each shot. Finally, the State provided evidence Cordero shot at Casillas until he was out of bullets.

The fact Cordero admitted wanting to kill Miguel, had an argument with him before the shooting, expressed he was going to kill Miguel immediately before shooting him, and shot him approximately nine times, taking the time to re-aim between each shot, is more than enough evidence to convince a reasonable fact finder of Cordero's specific intent. Such evidence was buttressed by Cordero buying a bus ticket under an assumed name and fleeing to Mexico, indicating his consciousness of guilt. *See State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995) (implying admission from conduct of defendant subsequent to a crime which indicates consciousness of guilt).

Cordero's arguments regarding intoxication and provocation fail to overcome the evidence of specific intent. With regard to intoxication, Cordero cites testimony from several individuals saying Cordero was drinking throughout the day, testimony from one witness describing Cordero as drunk, and evidence of empty and full beer cans found in Cordero's truck after it was impounded. This evidence falls short of proving he was unable to form the requisite specific intent to commit either crime due to intoxication. "To operate as a defense, the intoxication must be so great that the defendant is unable to form a specific intent." *State v. Johnson*, 234 N.W. 263, 267 (1931). The only evidence equating Cordero's drinking to intoxication—witness Jose Martinez describing Cordero as drunk—could have been discounted by the jury. Martinez was himself admittedly intoxicated at the time of his observation, testified Cordero was "probably" intoxicated, and was the only person out of numerous eyewitnesses to describe Cordero as intoxicated.[3] A rational jury could conclude the evidence of Cordero's intoxication was not strong enough to surmount the proof pointing to Cordero's specific intent.

Cordero also contends the shooting was a result of provocation. Generally, "serious provocation" can reduce an offense from murder to voluntary manslaughter if it is "sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill."

---

[3] Rogelio Carlos Basurto testified Cordero "wasn't drunk" when he left the shop and stated Cordero knew what he was doing because he was speaking coherently. This testimony accords with the testimony of other witnesses who stated Cordero was not intoxicated when they saw him throughout the day.

*See* Iowa Code § 707.4. Cordero's evidence regarding provocation was an argument between Cordero and Miguel before the shooting, as well as insults and "aggressive" language from Miguel toward Cordero. Cordero argues this evidence shows he did not form specific intent to commit the charged crimes. But this evidence does not properly establish a defense of provocation. First, a verbal argument is normally not enough. *See State v. Thompson*, 836 N.W.2d 470, 478 (Iowa 2013). It requires more than words alone to establish "serious provocation." *Id.* Also, to use provocation as a defense, it is necessary "that there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain his or her control and suppress the impulse to kill." *State v. Inger*, 292 N.W.2d 119, 122 (Iowa 1980). Because anywhere from ten minutes to two hours elapsed between the argument and shooting, Cordero had sufficient time to "cool off." As such, provocation, like intoxication, did not undermine Cordero's specific intent and there was thus sufficient evidence to convict Cordero on the charge of murder in the first degree.

Regarding the charge of attempt to commit murder, Cordero again argues an absence of evidence as to his specific intent. Here, we need only look at the fact Cordero shot Casillas until running out of bullets, hitting him twice. As expressed in *State v. Young*, 686 N.W.2d 182 (Iowa 2004), we may look to the natural result of acts in deciding questions of intent. The natural result of repeatedly shooting a gun at another person is death. Guns are deadly weapons and their use may indicate the shooter's malice. *See State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001). Just as the court found specific intent to kill in

*Young*, 686 N.W.2d at 185–86, based on the act of the defendant shooting at a police officer, regardless of motive, we too find sufficient evidence of specific intent in Cordero pointing the gun at Casillas and shooting numerous times. As such, the jury's verdict was based on sufficient evidence.

### B. Jury Instructions

Cordero next contends the district court erred in denying his request to instruct the jury on the defense of intoxication. Cordero asked for the uniform intoxication instruction[4] before jury deliberations. Despite this, the State argues Cordero's claim is not preserved for our review. The State contends in addition to the request for an intoxication instruction, Cordero was required to first file a notice of intent to rely on the intoxication defense within forty days of arraignment. *See* Iowa R. Crim. P. 2.11(11)(c).[5] Cordero did not file this notice of defense. The rule states a party who fails to abide by the time periods for giving notice of a defense may be restricted from presenting evidence of the

---

[4] The requested jury instruction read:

> Defendant claims he was under the influence of intoxicants or drugs at the time of the alleged crime. The fact that a person is under the influence of intoxicants or drugs does not excuse nor aggravate his guilt. Even if a person is under the influence of an intoxicant or drug, he is responsible for his acts if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the intoxicant or drug and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

[5] Rule 2.11(11)(c) states:

> If defendant intends to rely upon the defense of intoxication by . . . alcohol, . . . the defendant shall, within the time for filing pretrial motions, file written notice of such intention. The court may for good cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

defense.[6]  But the language of rule 2.11(11)(d) does not address the availability of an intoxication jury instruction when notice of the defense is not given.  We decline to read language into the rule the drafters could have supplied if they had so intended.  *See Telegraph Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 535 (Iowa 1980).  Finding error was preserved, we turn to the question of whether Cordero was entitled to an intoxication instruction.

"[T]he court is required to give a party's requested instruction so long as it 'states a correct rule of law having application to the facts of the case and when the concept is not otherwise embodied in other instructions.'" *State v. Marin*, 788 N.W.2d 833, 837 (Iowa 2010) (quoting *Summy*, 708 N.W.2d at 340).  Here we must ask whether the facts of the case are sufficient to warrant an intoxication jury instruction.

Trial courts are required to instruct juries on "all material issues raised by the evidence."  *State v. Broughton*, 425 N.W.2d 48, 51 (Iowa 1988).  To receive such an instruction, defendants must produce "substantial evidence" to support it. *Id.*  Substantial evidence is evidence which "could convince a rational finder of fact that the defendant has established his affirmative defense."  *Id.*  During trial, both the State and the defense presented evidence Cordero had consumed alcohol the day of the shootings.   Cordero presented testimony from individuals recalling his drinking that day, testimony from Jose Martinez describing Cordero

---

[6] Rule 2.11(11)(d) states:

> If either party fails to abide by the time periods heretofore described, such party may not offer evidence on the issue of . . . intoxication . . . without leave of court for good cause shown.  In granting leave, the court may impose terms and conditions including a delay or continuance of trial.  The right of a defendant to give evidence of . . . intoxication . . . in the defendant's own testimony is not limited by this rule.

as drunk, and evidence of both empty and full beer cans in his truck. Testimony also indicated Cordero "liked to drink too much" and would, despite it upsetting Miguel, come to El Tarasco's when he was drunk in his truck, driving recklessly. It was during one of those times that Cordero reportedly damaged a customer's vehicle, leading to the feud between Cordero and Miguel.

This evidence is substantial in that "a reasonable mind would accept it as adequate to reach a conclusion." *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000). While the evidence in question does not establish Cordero's intoxication as a matter of law, the bar is not set so high in determining the sufficiency of evidence necessitating a jury instruction for an affirmative defense. In *Broughton*, 425 N.W.2d at 52, the court required an intoxication instruction even when the evidence of intoxication "was not particularly strong." In that case, the only evidence of intoxication was the defendant's testimony about his drinking and intoxication as well as corroborating testimony from his brother and cousin. *Id.* Here, Cordero presented similar testimonial and circumstantial evidence pertaining to his drinking and intoxication.

When determining the sufficiency of evidence in questions of jury instructions, we view the evidence in a light most favorable to the party seeking the instruction. *See Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 325 (Iowa 1997). Viewing the evidence in a light most favorable to Cordero, a reasonable mind could deem evidence of Cordero's history of coming to El Tarasco's drunk, his day-long drinking on the Fourth of July, the presence of empty beer cans in his truck, and testimony describing him as drunk as adequate, despite not being

overwhelming, to reach the conclusion Cordero was indeed intoxicated. For evidence to be insubstantial, no reasonable mind would accept it as adequate to reach a conclusion. This is not the case here. The evidence met the necessary threshold and the court was thus obligated to give a jury instruction regarding the defense of intoxication.

For us to reverse because of error in giving or refusing jury instructions, the error must result in prejudice to the defendant. *State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996). When the error in refusing to give a jury instruction does not implicate a constitutional right, we presume prejudice and reverse unless the record affirmatively establishes no prejudice. *State v. Becker*, 818 N.W.2d 135, 140–41 (Iowa 2012). We assess prejudice by asking "whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985).

Here, Cordero was not prejudiced by the district court's decision. Most notably, Cordero was still able, despite the court's refusal to give the instruction, to present his defense of intoxication to the jury. Cordero's closing argument centered on intoxication, asserting Cordero "was drinking, and he was drinking, and he was drinking, and he was drinking" and noting "alcohol combined with this emotionally charged situation and what we have is an unfortunate result." Cordero's closing argument asserted the issue of intoxication went to Cordero's specific intent and impacted his ability to "formulate, premeditate, and willfully plan this thing that happened." Such comments track the requested jury

instruction. Cordero's counsel even suggested to the jurors they should return a verdict on involuntary manslaughter, which goes beyond the impact of intoxication described in the requested jury instruction: "Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming specific intent."

While Cordero had his request for the intoxication instruction improperly denied, he was nevertheless able to present the affirmative defense to the jury. Additionally, as noted above, his proof of intoxication was not enough to overcome the evidence showing his specific intent. The court's failure to give an intoxication instruction amounted to harmless error.

### C. Ineffective Assistance of Counsel

Cordero contends counsel's failure to file a notice of an intoxication defense constituted ineffective assistance. Cordero must establish the claim by a preponderance of the evidence and overcome the presumption counsel is competent. *See Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980). Cordero must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). To establish prejudice, Cordero must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

We need not analyze both prongs when one has not been met. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). When a claim lacks prejudice, we can rule on that ground alone without deciding whether the

attorney performed deficiently. *Id.* As the Supreme Court stated, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Here, we conclude, regardless of whether counsel breached a duty, Cordero was not prejudiced by counsel's failure to file a notice of reliance on an intoxication defense.

Cordero contends filing notice would have put him in a "more advantageous position to request the marshalling instruction on the defense of intoxication." But the court denied the request based on its perception of the weak evidence of intoxication, not on the failure to give notice of the defense. Plus, Cordero was able to present a defense of intoxication throughout the trial. Accordingly, he is unable to show prejudice.

### D. Consecutive Sentences

Cordero finally contends the district court erred by not giving sufficient reasoning for its decision to impose consecutive sentences. In sentencing Cordero, the court stated:

> As to Count I, the defendant shall be imprisoned for a term of life. And as to Count II, for 25 years, as provided by Chapter 902 of the Code of Iowa. Said sentences shall run consecutive to each other.
>  . . . .
> What is true, Mr. Guerrero-Cordero, is that you chose to take a human life and try to take another. You took a life of another in total disregard for life, as evidenced by the manner in which this occurred with witnesses present.
> In addition, you attempted to kill a person, [while] not even knowing that other person for no reason whatsoever. It demonstrates just how dangerous you are to society. That only a lifetime in prison is sufficient to protect society from your totally malicious and criminal acts.

Cordero contends these statements support the incarceration decision, but not imposition of consecutive sentences. The district court is required to publicly announce whether sentences are to be served consecutively or concurrently, Iowa Code section 901.5(9)(c) (2013), and to provide its reason for imposing consecutive sentences. *See State v. Delaney*, 526 N.W.2d 170, 178 (Iowa Ct. App. 1994). The reasoning may be cursory so long as it "allow[s] appellate review of the trial court's discretionary action." *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000).

We conclude the district court satisfied this burden. In sentencing Cordero, the court did not have discretion regarding the mandatory terms for first-degree murder and attempt to commit murder. *See* Iowa Code §§ 707.2, 707.11, 902.1(1), 902.12(2), 907.3. The only discretion left to the court was whether to run the mandated sentences concurrently or consecutively. Any reasoning provided for the court's decision thus applied to the consecutive sentences.

Additionally, the court may order consecutive sentences as "part of an overall sentencing plan." *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989). Here, the court referred to the two different shooting victims and admonished Cordero for disregarding two lives. Without consecutive sentences, the court believed Cordero's attempted murder of Casillas would not be appropriately punished. Accordingly, resentencing is not required.

**AFFIRMED.**