# IN THE COURT OF APPEALS OF IOWA

No. 14-1869
Filed January 25, 2017

**JAMES CHARLES TYSON,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

Applicant appeals from district court order denying his application for postconviction relief. **AFFIRMED.**

Peter Stiefel of Stiefel Law Firm, Victor, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., McDonald, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**SCOTT, Senior Judge.**

James Charles Tyson appeals from the district court's denial of his application for postconviction relief (PCR). On appeal, he contends his trial counsel was ineffective for failing to present the defenses of voluntary intoxication and diminished capacity during Tyson's trial for attempt to commit murder and willful injury. He also contends his PCR counsel was ineffective for failing to call Tyson's trial counsel or an expert in mental health as a witness. For the following reasons, we affirm the judgment of the district court.

## I. Background Facts and Proceedings

On July 3, 2009, Tyson began drinking alcohol around 8:30 a.m. and continued drinking all day. He went to a tavern around 8:00 p.m. Around 9:00 p.m., according to Tyson, he encountered "three Europeans" who ripped his shirt and punched him in the face. Tyson testified he, in self-defense, stabbed one of the men "probably twice." The evidence shows the victim, Michael Grabbe, was stabbed fourteen or fifteen times. Grabbe testified he was outside the tavern smoking a cigarette when Tyson approached him and said "you are going to die" before stabbing him. Following the stabbing, Tyson was apprehended about one and one-half blocks away with Grabbe's blood on his clothes. Tyson also threw a large knife on the ground that had Grabbe's blood on it.

Tyson was charged with attempt to commit murder, in violation of Iowa Code section 707.11 (2009), and willful injury causing serious injury, in violation of section 708.4(1). Tyson was initially found incompetent to stand trial due to his diagnoses of schizoaffective disorder, paranoid personality disorder, and paranoid schizophrenia. Following months of competency-restoration measures,

however, Tyson was deemed competent. The matter proceeded to trial, after which Tyson was found guilty as charged. Tyson was sentenced to consecutive prison sentences of fifteen and twenty-five years and a fine. On appeal, this court affirmed the convictions but vacated the fine. *See State v. Tyson*, No. 11-0433, 2012 WL 836846, at *5 (Iowa Ct. App. Mar. 14, 2012). One claim Tyson raised on direct appeal—whether his trial counsel was ineffective for failing to pursue other defenses—was preserved for PCR proceedings. *See id.* at *3.

Tyson brought that preserved claim in this PCR action. The district court denied his application. Tyson now appeals that ruling and brings an additional claim his PCR counsel was ineffective.

## II. Scope and Standard of Review

We review claims of ineffective assistance of counsel de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To prevail on such a claim, a defendant must show by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Failure to prove either element is fatal. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

Under the first prong, the applicant must show counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–88. This means the attorney's performance falls outside the normal range of competency. *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). We indulge a strong presumption of counsel's competency. *Strickland*, 466 U.S. at 689.

To prove the second prong, the applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." *Id.* at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *State v. Bugely*, 562 N.W.2d 173, 178 (Iowa 1997). "Improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience" does not necessarily amount to ineffective assistance of counsel. *State v. Aldape*, 307 N.W.2d 32, 42 (Iowa 1981).

## III. Analysis

### A. Trial Counsel

Tyson argues his trial counsel was ineffective for failing to present the defenses of voluntary intoxication and/or diminished capacity. Either defense, if established, would negate the specific-intent element of the charged crimes. *See* Iowa Code §§ 707.11 (requiring specific intent for attempt to commit murder), 708.4 (requiring specific intent for willful injury causing serious injury); *State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015) (stating voluntary intoxication may negate specific intent), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016); *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008) (stating diminished capacity may negate specific intent); *State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004) (discussing specific intent in context of attempt to commit murder); *State v. Hickman*, 623 N.W.2d 847, 852 (Iowa 2001) (discussing specific intent in context of willful injury). Tyson argues the theory his trial counsel advanced—self-defense—had little likelihood of success; however, he contends, diminished capacity and voluntary intoxication "appear[] to have a good chance of success." He notes on the day of

the stabbing, he was intoxicated and had not taken his mental-health medication for fifteen months. He also highlights his struggles with mental illness.

Tyson's testimony on his discussions with trial counsel about defense strategy was equivocal and unpersuasive. It falls short of the necessary preponderance of the evidence. *See Strickland*, 466 U.S. at 687–88. On that basis alone, we might deny his claim. *See Graves*, 668 N.W.2d at 869. But it is also apparent he did not suffer any prejudice as a result of any failure by counsel. The initial case was tried to the bench. Tyson testified as to his intoxication and lack of medication. The district court made findings related to Tyson's specific intent that were contrary to the fact Tyson would have needed to establish to prove these defenses. There is no reasonable probability the outcome of this case would have been different. *See Strickland*, 466 U.S. at 694.

**B. PCR Counsel**

Tyson asserts his PCR counsel was ineffective for failing to depose or call his trial counsel as a witness and for failing to call an expert on mental health as a witness. "The merit of his ineffective-assistance-of-PCR-counsel claims depend on the merit of [the] underlying ineffective-assistance-of-trial-counsel claims." *Dockery v. State*, No. 13-2067, 2016 WL 351251, at *3 (Iowa Ct. App. Jan. 27, 2016) (citing *Ledezma v. State*, 626 N.W.2d 134, 141–42 (Iowa 2001)). Because we find Tyson's ineffective-assistance claim as to trial counsel fails, we likewise find his PCR counsel was not ineffective.

**AFFIRMED.**