## IN THE COURT OF APPEALS OF IOWA

No. 23-0625
Filed October 30, 2024


**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**ISHMAEL SHABAZZ CARTER,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Johnson County, Valerie L. Clay,

Judge.


　　　　A defendant challenges the sufficiency of the evidence supporting his

convictions for arson in the first degree and five counts of attempted murder.

**AFFIRMED.**


　　　　Kent A. Simmons, Bettendorf, for appellant.

　　　　Brenna Bird, Attorney General, and Linda J. Hines and David Banta,

Assistant Attorneys General, for appellee.


　　　　Heard by Ahlers, P.J., Sandy, J., and Telleen, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**AHLERS, Presiding Judge.**

Ishmael Carter had been in an on-again-off-again romantic relationship with a woman for six years. One afternoon when the relationship was off, the woman and her new boyfriend ran into Carter while out for a walk. The woman and Carter had a verbal altercation, and the police were called to the scene. After the police came, Carter shouted at the woman and her boyfriend. They perceived Carter's comments as threats.

Approximately one week later, the woman called 911 at 10:45 p.m. to report an individual, who she believed to be Carter, knocking and pouring liquid on or around her apartment door. Minutes later, the woman told the 911 operator she thought the individual had left, and she ended the call. From 11:05 p.m. to 11:08 p.m., Carter was observed on video purchasing lighter fluid from a gas station two and one-half blocks from the woman's apartment. At 11:13 p.m., the woman called 911 again and told the operator her apartment door was on fire. A law enforcement officer, who was aware the woman had alleged Carter to be the one knocking at her door, noticed him standing near the apartment complex while the fire was being extinguished. That officer and another officer approached Carter and detained him. The other officer eventually took Carter into custody.

The State charged Carter with arson in the first degree. It also charged him with five counts of attempted murder—one count each for the woman, her three children, and her boyfriend who were in the apartment. Following a trial, the jury found Carter guilty of all six crimes, and the court sentenced him to up to fifty years in prison. Carter appeals and challenges the sufficiency of the evidence supporting all his convictions.

## I.      Standard of Review

"We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Veal*, 930 N.W.2d 319, 328 (Iowa 2019).  "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022).  Insufficient evidence is evidence that merely raises suspicion, speculation, or conjecture.  *State v. West Vangen*, 975 N.W.2d 344, 349 (Iowa 2022).  "In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'"  *Crawford*, 972 N.W.2d at 202 (citation omitted).  We consider all evidence, not just evidence supporting the conviction, but remain highly deferential to the jury's verdict.  *West Vangen*, 975 N.W.2d at 348.

## II.      Arson in the First Degree

Carter's jury was instructed that the State had to prove all the following elements of arson in the first degree:

> 1. On or about the 13th day of June, 2021[,] the [d]efendant caused a fire or explosion or placed lighter fluid, a burning, combustible, incendiary[,] or explosive device or material in or near property.
> 2. The lighter fluid was a combustible, incendiary[,] or explosive material.
> 3. The [d]efendant intended to destroy or damage the property or knew the property would probably be destroyed or damaged.
> 4. The presence of a person in the property could have been reasonably anticipated.

Because Carter makes no objection to this marshaling instruction, it is the law of the case for purposes of assessing his sufficiency-of-the-evidence challenge. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020).

Carter's challenge to his arson-in-the-first-degree conviction is straightforward. He does not claim the State failed to prove that someone did all the acts described in the above instruction. He simply contends the State failed to prove he is the person that did them.

The State's case was based largely on circumstantial evidence, which is evidence that "tends to prove a fact in issue by proof of collateral facts from which it may be reasonably and logically deduced that the alleged ultimate fact exists." *See State v. Wesson*, 149 N.W.2d 190, 192 (Iowa 1967). But the fact the State's case is built largely on circumstantial evidence does not undermine Carter's conviction—direct and circumstantial evidence are equally probative. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). In fact, a conviction can be based solely on circumstantial evidence so long as that evidence is sufficient to convince a factfinder of the defendant's guilt beyond a reasonable doubt. *See State v. Bol*, 9 N.W.3d 783, 788 (Iowa 2023).

We start our analysis of the sufficiency of the evidence supporting the jury's finding that Carter is the person who started the fire by summarizing the evidence supporting the verdict. Viewed in the light most favorable to the State, the jury could find the facts that follow.

Carter threatened the woman and her new boyfriend a few days before the fire was set. On the night the fire was set, the woman was home in her apartment along with her new boyfriend and her three children. Carter began banging on the

woman's apartment door and placed some form of liquid on or around the door. The woman called 911 and identified Carter as the person at her door. Tracking evidence of Carter's cell phone and surveillance video from a nearby gas station shows that Carter left the woman's apartment, went to the gas station, and purchased lighter fluid. The phone-tracking evidence shows Carter leaving the area of the gas station and going immediately to the woman's apartment at the same time the fire started. The fire was started intentionally by use of an ignitable liquid. An empty lighter fluid bottle was found at the top of the pile of garbage in the dumpster of the woman's apartment complex. The bottle found in the dumpster was the same brand of lighter fluid Carter purchased at the gas station, and it had one of Carter's fingerprints on it.

Carter was located by law enforcement officers near the scene of the fire as firefighters worked to extinguish the blaze. He had a lighter in his pocket. When questioned, Carter claimed he was home all night before coming out in response to the hullabaloo created by the arrival of fire trucks and police officers in the area— a clearly false story given the uncontested fact that Carter was at the gas station buying lighter fluid a few minutes before the fire started. *See State v. Ernst*, 954 N.W.2d 50, 56 (Iowa 2022) (holding that a "false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt . . . and is relevant to show that the defendant fabricated evidence to aid his defense" (ellipsis in original) (quoting *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993))). Testing of the shoes Carter was wearing when detained by law enforcement officers a few minutes after the fire started revealed the shoes had medium

petroleum distillate on them. Medium petroleum distillate is an ignitable liquid, an example of which would be charcoal lighter fluid.

On appeal, Carter attempts to undermine many of the above-described pieces of evidence. He challenges the woman's identification of Carter as the person knocking on her door when she first called 911. He points out that, when asked what she did when someone began knocking on her apartment door, she responded "I already knew who it was, but I peeped through the peephole." She immediately assumed it was Carter before looking and admitted she never saw the individual's face or heard his voice during this interaction. After the fire, the woman told police to look for an individual with braided hair in a hat, white shirt, and black pants, but at the time of trial she denied seeing a hat and believed the shirt to be blue or black. The surveillance video from the gas station showed Carter wearing a black shirt. Carter also contends the woman's use of marijuana before the events leading to the fire diminished her ability to perceive and recollect details of that night.

While we agree the above details highlighted by Carter raise questions about the woman's identification of Carter as the person banging on her door before Carter purchased lighter fluid, it is ultimately the jury's responsibility to resolve the conflict in the evidence, not ours. *See Brimmer*, 983 N.W.2d at 256 ("It is not [the appellate court's] place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (quoting *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006))). We also note that the woman's identification of Carter as the person knocking on her door about half an hour before the fire was started is

not the sole piece of evidence against Carter. In fact, given that her identification of Carter occurred about thirty minutes before the fire and the person she identified as Carter left, the identification evidence was a small piece of the State's case. So we turn to Carter's challenge to some of the other evidence.

While Carter does not challenge the fact he was the person purchasing lighter fluid at the gas station about five minutes before the fire began, he claims the time stamps on the gas station surveillance video and the receipt of his purchase show that it was nearly impossible for him to have started the fire because there was not time for him to leave the gas station, arrive at the apartment, and start the fire before the woman called 911 to report the fire about five minutes after he purchased the lighter fluid. We disagree. First, a reasonable juror could conclude a person could walk or run two and one-half blocks, douse a door with lighter fluid, and put a lighter to it in under five minutes. Second, the evidence showing the movement of Carter's cell phone shows the phone going directly from the gas station to the woman's apartment building in the time window at issue. Carter attempts to undermine this tracking evidence by claiming it is misleading because the map used to show the movement of the phone failed to mark the proximity of his nearby residence to the apartment building, and the location evidence is not precise enough to definitively determine where Carter and his phone were in the area. These are all arguments that should have been made— and were made—to the jury, but the jury rejected them. It is not our role on appeal to serve as a second jury and weigh the evidence or resolve conflicts in the evidence. *See id.*

Carter also challenges the evidence about his fingerprint being found on the lighter-fluid bottle discarded in the dumpster of the woman's apartment complex. First, he points out that the two law enforcement officers who confirmed that it was Carter's latent fingerprint found on the bottle were not certified fingerprint analysts. However, Carter does not challenge that the officers were permitted to testify as experts or the admissibility of their testimony as experts. His challenge thus boils down to nothing more than asking us to weigh the evidence differently than the jury did, which we are not permitted to do. *See id.* Second, he contends there was no evidence that the bottle found in the dumpster is the same bottle he purchased at the gas station, when the lighter-fluid bottle was placed in the dumpster, who placed it there, or how far that dumpster is from Carter's residence. While Carter is correct that there was no such evidence, his challenge again asks us to weigh the evidence, which is not our role. *See id.*

Based on our review of the evidence, a reasonable juror could have concluded that Carter is the person that started the fire. As Carter's only challenge to his arson conviction is that of identity, there is substantial evidence supporting the jury's verdict finding Carter guilty of arson in the first degree.

## III.    Attempted Murder

Carter also challenges his five convictions for attempted murder. The five marshaling instructions on these charges were identical except for the name of the alleged victim and required the State to prove:

> 1.  On or about the 13th of June, 2021[,] the [d]efendant set fire to an occupied apartment building.
> 2.  By his acts, the defendant expected to set in motion a force or chain of events which would cause or result in the death of [the alleged victim].

    3. When the defendant acted, he specifically intended to cause the death of [the alleged victim].

As Carter makes no objection to these marshaling instructions, they are the law of the case for purposes of assessing his sufficiency-of-the-evidence challenge. *See Schiebout*, 944 N.W.2d at 671.

We have already rejected Carter's challenge to the jury's determination that he was the person that started that fire. As a result, we reject his challenge to his attempted-murder convictions based on the claim that he was not the fire starter.

We proceed to Carter's claim that that there is insufficient evidence that he specifically intended to cause the death of the occupants of the apartment. In support of this argument, Carter contends (1) knocking on the door shows an intent to make sure no one was home; (2) he knew the woman's apartment had a balcony that would have provided an escape route; and (3) he knew the woman had a cell phone to summon rescue from the fire.

We find none of Carter's arguments persuasive to negate the jury's finding that he intended to kill the five occupants of the apartment. In reaching this conclusion, we start by noting the legal principle that one can infer that an actor intends the natural and probable consequences that follow the act. *State v. Keeton*, 710 N.W.2d 531, 534 (Iowa 2006). Additionally, as to attempted murder specifically, the "would cause" language in the second element of the marshaling instructions given here "refers to the actor's expectation of the consequences of his . . . act, not the probability of the act's success." *See State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004). As a result, the "factual possibility or probability of success is utterly irrelevant to [the] analysis." *Id.*

The jury determined that Carter set the woman's apartment door on fire and, in doing so, intended to kill the five people inside. A reasonable juror could conclude that just because Carter knocked on the door for an extended period thirty minutes before setting the door on fire did not negate his intent to kill the occupants, especially when there was evidence that Carter bent down to peer through a gap at the bottom of the door, from which vantage point he could have seen the woman's feet as she stood at the door looking through the peephole.

As to the claimed escape route via the balcony, we note that the woman's apartment was on the third floor. A reasonable juror could conclude that escape by two adults and three young children jumping from a third-floor balcony was not a bona fide escape route, so Carter intended to kill the occupants because he set fire to the only legitimate exit point from the apartment.

Finally, a reasonable juror could find Carter intended to kill the occupants of the apartment even though one or more of them may have had a cell phone. First, at that time of night, the occupants may have been sleeping when the fire was started and unable to summon help. Second, evidence established that firefighters were overwhelmed by smoke in the building, so they had to don oxygen masks to proceed to the woman's apartment. Evidence also established that occupants in burning buildings can be overcome by smoke quite quickly. Reasonable jurors could conclude from this evidence that the occupants could have been overcome by smoke or the fire long before help could have arrived even if they successfully accessed their cell phones.

Reasonable jurors could have concluded Carter intended to kill all five occupants of the apartment.[1]  As a result, substantial evidence supports the jury's determination that Carter is guilty of five counts of attempted murder.  Carter's challenge to the sufficiency of the evidence supporting his convictions for those five crimes fails as a result.

## IV.    Conclusion

After considering all evidence in the light most favorable to the State, we conclude substantial evidence supports the jury's findings that Carter started the fire at the apartment and intended to kill the five people inside.  As a result, we affirm all six of his convictions.

**AFFIRMED.**

---

[1] Although not clearly raised in his brief, during oral argument, Carter's counsel suggested there was insufficient evidence supporting four of the attempted-murder convictions because the State failed to prove that Carter knew that the boyfriend or children were in the apartment.  To the extent Carter is asserting such a claim, we reject it.  The doctrine of transferred intent imposes criminal liability on a defendant who acts with intent to kill or harm one person but inadvertently kills or harms an unintended person.  *State v. Mong*, 988 N.W.2d 305, 313 (Iowa 2023) (finding sufficient evidence to support an attempted-murder conviction when a defendant fired a gun at one person but hit another); *see also State v. Davis*, 883 S.E.2d 98, 104 (N.C. Ct. App. 2023) (rejecting defendant's claim that the evidence was insufficient to support an attempted-murder conviction stemming from the defendant setting fire to the victims' house because the defendant did not know one of the victim would be visiting at the house).  For the reasons already stated, the State presented sufficient evidence of Carter's intent to kill, and that intent transferred to all occupants of the apartment.